LANCE, Judge,
dissenting:
I believe the proper disposition of this case is for the Court to remand the matter to the Board for an adequate medical examination based on “accepted medical principles,” in accord with 38 C.F.R. § 3.304(a)(1). Although I believe the majority’s analysis proceeds in the correct general direction, there are three aspects of the opinion that concern me. First, I do not believe the opinion fully and accurately evaluates the evidence. Second, I believe the opinion misses an opportunity to provide clear guidance to adjudicators below. Finally, I do not believe that the remedy chosen is either required or appropriate. Therefore, I must dissent.
I. ANALYSIS OF THE EVIDENCE
My first concern is that the majority understates the current evidence that suggests that the appellant’s condition was not aggravated by service. The majority frames the issue as “whether a medical examination board (MEB) report containing only an unexplained ‘X’ in a box on a form can constitute clear and unmistakable evidence of lack of aggravation.” Ante at 233. However, the mark on the MEB report is far from the only evidence against this claim. Relevant evidence is anything that “has any tendency to make a fact more or less probable than it would be without the evidence.” Fed.R.Evid. 401(a). A piece of evidence need not be conclusive to be relevant and the ultimate question presented is whether the totality of the evidence rose to the necessary level to deny the claim, not whether one particular piece of evidence was sufficient.
In this case, there are numerous pieces of evidence against the appellant’s claim. As to the MEB report itself, the mark indicating that his condition existed prior to service and was not aggravated by it is not the only relevant portion. The report also indicates that three doctors were unanimous in reaching that conclusion. R. at 231. Although a claim cannot be decided merely by counting the number of doctors in support of or against it, the fact that additional doctors reached the same conclusion and that the doctors were unanimous makes it more probable that the conclusion is true than if only a single doctor were involved or if a panel were divided. See Kahana v. Shinseki, 24 Vet.App. 428, 438 n. 8 (2011) (Lance, J., concurring) (noting that an opinion that lacks detail may still lend some support to other opinions that reach the same conclusion). The report also indicated that the appellant was “medically fit” “for further military service.” R. at. 230. This finding in *246 the report also tends to show that his condition was not permanently aggravated by service.
Aside from the MEB report, there is other evidence in the record against the claim that the majority fails to acknowledge. First, the appellant’s SMRs do not indicate that he suffered a leg injury in service. Even though there is presumption of aggravation, the absence of an in-service injury tends to make it less likely that his condition was aggravated by service than if he had injured his left hip in service. Second, the appellant had only seven-and-a-half weeks of service and his condition was observed during his first few weeks of service. Just as a long career in service would make it more likely that a condition was aggravated by service, very brief service tends to make it less likely that a condition was aggravated by service. As the Federal Circuit recognized in Maxson v. Gober, basic facts about the periods involved in a claim are relevant evidence on medical causation issues that are within the common knowledge of a lay adjudicator. 230 F.3d 1330, 1333 (Fed.Cir. 2000). Finally, the record indicates that the appellant did not seek treatment for his leg condition until 15 years after service and, even afterward, had extended periods where he did not complain of a disability caused by his condition. R. at 141. This is exactly the type of “evidence of a prolonged period without medical complaint” that the Federal Circuit in Maxson concluded was relevant to the Board’s determination that a condition was not aggravated by service. Id. Thus, here the majority is inaccurate in stating that the only evidence against this claim is one mark on a 40-year-old form.
I believe the majority’s error in this regard stems from two persistent problems in analyzing evidence in veterans claims. The first is a tendency to conflate the adequacy of a medical opinion with its probative value. The fact that a medical opinion is inadequate to decide a claim does not necessarily mean that the opinion is entitled to no probative weight. If the opinion is based on an inaccurate factual premise, then it is correct to discount it entirely. See Reonal v. Brown, 5 Vet.App. 458, 461 (1993). However, if the opinion is merely lacking in detail, then it may be given some weight based upon the amount of information and analysis it contains. See Nieves-Rodríguez v. Peake, 22 Vet.App. 295, 302 (2008).
The majority is simply in error when it states that a conclusion by a physician is entitled to zero probative weight if it is not supported by analysis. If that were true, then a favorable medical opinion from a veteran’s doctor that was unsupported by analysis would not be sufficient to trigger the Secretary’s duty to assist. See McLendon v. Nicholson, 20 Vet.App. 79, 83 (2006) (holding that 38 U.S.C. § 5103A(d)(2) requires that a medical opinion to be provided where the evidence indicates that a claim has merit but is insufficient to grant the claim). Indeed, McLendon explicitly states that “[t]he types of evidence that ‘indicate’ that a current disability ‘may be associated’ with military service include, but are not limited to, medical evidence that suggests a nexus but is too equivocal or lacking in specificity to support a decision on the merits.” Id. (quoting 38 U.S.C. § 5103A(d)(2)). Thus, VA is not permitted to completely ignore a bald conclusion by a doctor that supports a claim and the majority is plainly incorrect to reject the conclusion of the three doctors who signed the MEB report by dismissively stating that three times zero is still zero. Ante at 241.
Put another way, if a tort case were tried before a jury and the plaintiff had three different doctors testify that they *247 thought there was causation, a jury could rely on their unrebutted expertise even if they did not explain why they reached the stated conclusion. Indeed, that is precisely the difference between the jury system and the veterans claims system. It is not enough that the weight of the evidence is against the claim in our system. Our system is transparent and requires the Board to explain the why the evidence weighs against the claim. See Allday v. Brown, 7 Vet.App. 517, 527 (1995) (Board’s statement of reasons or bases for its decision “must be adequate to enable a claimant to understand the precise basis for the Board’s decision, as well as to facilitate informed review in this Court”). That is why this Court routinely remands claims to obtain a complete statement of reasons or bases where other appellate courts review trial determinations to see whether there is any reasonable view of the evidence that would support the conclusion reached by the factfinder after “drawing] all reasonable inferences in favor of the prevailing party.” Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc., 344 F.3d 1186, 1192 (Fed.Cir.2003).
The majority makes a similar error in stating that I “encroach[ ] on the role of a physician” by observing that the absence of an in-service injury tends to make it less likely that the appellant’s condition was aggravated by service. Although the majority cites no support for their criticism of my observation, it is clearly referring to Colvin v. Derwinski, in which this Court reprimanded the Board for relying on “its own unsubstantiated medical conclusions.” 1 Vet.App. 171, 175 (1991). However, the Federal Circuit has repeatedly reminded us that Colvin should not be cited as an absolute rule and that the Court must acknowledge that there are some basic principles of medicine that are within the common knowledge of a lay person, which includes both claimants and adjudicators. See Kahana, 24 Vet.App. at 435 (noting that “there is no categorical requirement of ‘ “competent medical evidence ... [when] the determinative issue involves either medical etiology or a medical diagnosis” ’ ” (quoting Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed.Cir.2009) (quoting Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed.Cir.2007)))).
Despite the clarity of instruction from the Federal Circuit, this Court is overdue in providing guidance as to what principles of medicine are within the common knowledge of laypersons. Unfortunately, the majority opinion misses a useful opportunity to do so. As discussed above, the Federal Circuit provided some direction in Maxson. The essential lesson of Maxson is that lay persons can recognize the basic connection between an in-service injury or disease, the passage of time, and the development of a disability. When a disability develops shortly after an in-service disease or injury affecting the same diseased or injured body part or system, it is simply common sense to infer that there is a connection. This inference will not always be correct, but the inference is accurate enough to have some weight and to trigger the duty to assist. Conversely, when a disability does not develop until long after service, then a connection is unlikely— especially if there was no injury or disease in service affecting the body part or system at issue.
To be clear, medical common knowledge must be used with caution. When it is favorable, it is not per se sufficient to grant the claim. When, as here, it is unfavorable, it is not per se sufficient to deny the claim. Instead, the adjudicator must take care to consider it on a case by case basis. Moreover, general medical common knowledge may be rebutted with expert medical evidence that shows that the basic intuition is not accurate for a *248 particular set of facts. Thus, the Board should be explicit as to how it assigns weight to medical common knowledge in each case.
In this particular case, the majority is correct that there is no evidence as to the nature and progression of Legg-Perthes disease. However, the majority ignores the fact that lay medical common knowledge has value precisely when it is unrebutted by expert evidence to the contrary. Applying the logic of the majority to discount medical common knowledge in the absence of confirmatory expert evidence effectively reinstates the absolute rule of Colvin that the Federal Circuit has clearly overruled.
The second problem is the majority’s tendency to ignore the evidentiary value of the absence of evidence. The Federal Circuit has made clear that absence of corroboration is not generally a basis for discounting lay testimony. See Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed.Cir.2006). However, as explained in my separate opinion in Kahana, this does not prevent an adjudicator from considering the probative value of silence in the available evidence if a proper foundation exists to demonstrate that such silence has a tendency to prove or disprove a relevant fact. 24 Vet.App. at 440. In this regard, the majority’s reliance on Buczynski v. Shinseki 24 Vet.App. 221 (2011) is misplaced. Buczynski does not stand for the absolute rule that the absence of evidence can never be considered, but instead states — as elaborated in Kahana, supra,— that the Board may consider a lack of notation of medical condition or symptoms as substantive negative evidence where such notation would normally be expected. 24 Vet.App. at 226-27.
The majority states that there is no logical reason to expect that an injury to the appellant’s leg would have been recorded if one had occurred in service. Ante at 239 n. 7. However, there is no basis for holding, as a matter of law, that it is unreasonable to expect that if the appellant had injured his leg during his brief service, then that fact would have been documented somewhere in the investigation as to whether his leg condition was aggravated by service. Of course, the fact that there was no observable injury to the leg in service is not sufficient to rebut the presumption of aggravation, but that does not change the fact that the absence of an observed injury makes it less likely his condition was aggravated by service than if an injury was noted. Thus, it appears that the majority is forgetting that a presumption exists only to allocate the burden of proof. It cannot rob evidence of its tendency to make a fact in issue more or less probable than it would be without the evidence. See Routen v. West, 142 F.3d 1434, 1440 (Fed.Cir.1998) (a “presumption affords a party, for whose benefit the presumption runs, the luxury of not having to produce specific evidence to establish the point at issue”).
For these reasons, I believe the majority dramatically understates the strength of the evidence rebutting the presumption of aggravation, which contributes to the incorrect remedy applied in this case.
II. PROPER EVALUATION OF AN MEB REPORT
My second concern with the majority opinion is that it fails to provide clear guidance to adjudicators as to how to handle future cases. The majority correctly notes that the Secretary’s regulation has clearly stated what evidence is required to rebut the presumptions of sound condition and of aggravation. The majority does a commendable job of quoting 38 C.F.R. § 3.304 and emphasizing the key language. Ante at 239-41. However, in its analysis *249 the opinion moves too quickly past this regulation.
It is § 3.304 that states the Secretary’s interpretation of what the evidence must show to reach the threshold necessary to rebut the presumption. The evidence must show that applying “accepted medical principles” regarding the nature of the condition to its history in the case at hand, including the relevant clinical data, would result in fully informed medical professionals agreeing as to whether the condition preexisted service or was aggravated by it. To the extent that this is usually (if not universally) an issue requiring medical expertise, see Jandreau, 492 F.3d at 1377 n. 4, the Board may not deny the claim based upon its own medical judgment, but rather must seek a competent medical opinion on the issue. See Colvin, 1 Vet.App. at 174.
In this regard, an MEB report that does not contain a narrative explaining why the doctors on the panel reached the conclusion that a condition preexisted service and was not aggravated by it will never contain the detail necessary to deny a claim. However, such a report will indicate that the presumption might not be accurate in a particular case and justify the Secretary’s decision to seek a medical opinion that fully addresses the standard and the factors laid out in § 3.304. See Douglas v. Shinseki, 23 Vet.App. 19, 25-26 (2009) (holding that the Secretary may seek an opinion that can rebut a favorable presumption if the record contains evidence raising the issue).
Thus, the clear message that this opinion should send to the Secretary is that adjudicators should not deny claims based upon MEB reports containing no supporting analysis, but instead should seek medical opinions that address the appropriate standard under the regulation. Such guidance might be inferred from the majority opinion, but it should be stated unequivocally.
III. APPROPRIATE REMEDY
Finally, I disagree with the majority that reversal is required in this case. Reversal is appropriate where law is settled and the Board’s determination of adequacy is “clearly erroneous.” However, I believe that in an area where the Court is providing new guidance (as it is doing here), VA should have the opportunity to obtain evidence under that guidance.
As detailed above, there is substantial evidence indicating that this claim does not have merit even though VA has not obtained a medical opinion that fully analyzes the issue under § 3.304. In my view, we have not clearly held prior to this case that VA must obtain a proper medical opinion addressing the regulatory standard if the MEB report does not contain a narrative analysis sufficient to apply those factors and, the Board decision in this case was not clearly erroneous under established law in denying benefits in this case. Indeed, this case is somewhat similar to Maxson, where the Federal Circuit affirmed a finding that the presumption had been rebutted based in large part on the long period without complaint after service. Thus, I cannot agree that the Board “abdicated its opportunity to develop suitable evidence” in this case. Ante at 244. Although the majority argues that “[tjhere has been no lack of clarity in the law pertaining to the presumption of soundness,” ante at 244, the problem is that there has been a profound lack of clarity in our caselaw explaining how the Board should weigh evidence. Unfortunately, this opinion adds to the confusion rather than helping to resolve it.
As I believe that the Board’s error here was understandable in light of the gaps in our case law, I also believe that the majori *250 ty’s reliance on Adams is misplaced. If anything, Adams counsels for remand in this case instead of reversal. In Adams, this Court remanded a similar claim to the Board because, even though there was substantial evidence against the claim, the medical opinion was ambiguous as to whether it had applied the correct standard. 256 F.3d at 1319-20. In appealing to the Federal Circuit, the appellant argued that reversal was the required remedy because the record contained “insufficient evidence to rebut the presumption of sound condition.” Id. at 1321. The Federal Circuit rejected this argument and held that it was appropriate for the Court to remand the case for further development in the form of “an explanation from [the VA physician] of his opinion, or if necessary supplemental medical evidence that might shed light on the ambiguities in [the VA physician]’s report.” Id. at 1322. In this case, we have a unanimous opinion from three doctors in the MEB report that the appellant’s condition preexisted service and was not aggravated by service. Although it is not possible to obtain clarification from those doctors, this is certainly a case where “supplemental medical evidence” under Adams would shed light on the ambiguity created by the lack of a narrative analysis supporting the conclusion in the report. To the extent that Adams contains dicta on when reversal would be appropriate based upon different sets of facts, it is simply not binding in this case. Even to the extent that Adams endorses reversal where the evidence presented to the Court is “clearly insufficient to overcome the presumption,” id. at 1322, I do not believe that the evidence in this case was clearly insufficient prior to this opinion clarifying the proper development and analysis required.
Ultimately, I believe that the Court has discretion in choosing the appropriate remedy on a case-by-case basis. Adams recognized that it is our mandate under 38 U.S.C. § 7252(a) to choose a remedy “as appropriate” to the case before us. Moreover, the U.S. Supreme Court in Shinseki v. Sanders warned against the creation of “complex, rigid, and mandatory” rules for this Court that require particular types of relief regardless of whether they are consistent with the facts or logic of a particular case. 556 U.S. 396, 407, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009). In this case, the Court’s decision to reverse the Board’s finding as to the presumption rather than to allow it to be addressed properly on remand is contrary to Adams and Sanders. As a result, it is the taxpayer who is punished for VA’s error even though the error is quite understandable based upon the evidence in this case and the confusion in the law prior to this opinion. Therefore, I must respectfully dissent.