Citation Nr: 1513872 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 11-20 804 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for hypertension, to include on the basis of exposure to herbicides.
 
2. Entitlement to service connection for an acquired psychiatric disability, to include posttraumatic stress disorder (PTSD) and depression, and as secondary to service-connected low back disability.

3. Entitlement to service connection for neck disability.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States





ATTORNEY FOR THE BOARD

C. D. Simpson, Counsel


INTRODUCTION

The Veteran served on active duty from August 1969 to October 1984.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from February 2009 and December 2010 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

In May 2014, the Board denied service connection for ischemic heart disease and remanded the issues on appeal for additional development. 

A January 2015 RO decision granted service connection for hearing loss and tinnitus. As the rating action results in a complete grant of the benefit sought, these issues are no longer on appeal. 

The claims folder has been converted in its entirety into an electronic record within the Virtual VA and Veterans Benefit Management System (VBMS).

The issue of service connection for hypertension is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ) via the Appeals Management Center (AMC), in Washington, DC.







FINDINGS OF FACT

1. The Veteran has PTSD from fear of hostile military activity experienced during active service in Vietnam. 

2. Neck disability did not have its clinical onset in service and is not otherwise related to active duty; degenerative cervical spine changes were not exhibited within the first post service year.


CONCLUSIONS OF LAW

1. The criteria for service connection for PTSD are met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2014).

2. The criteria for service connection for a neck disability are not met. 38 U.S.C.A. §§ 1101, 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.303(b), 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to notify and assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See, e.g., 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2014); see also Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), aff'd, Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007). As the decision on the acquired psychiatric disorder is fully favorable to the Veteran, discussion of VA's duties to provide notification and assistance is not necessary for this claim. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.156. 

The RO provided the required notice in November 2008, June 2010, and August 2011 letters sent to the Veteran. He does not assert prejudice from any notification deficiency and none has been identified by the Board. A remand for further notification of how to substantiate the claims is not necessary.

Regarding the duty to assist, the Board also finds that VA has adequately fulfilled its obligation to assist the Veteran in obtaining the evidence necessary to substantiate his claims. All available evidence pertaining to the Veteran's claims has been obtained. The evidence includes his service treatment records (STRs), VA treatment records, private medical records, and statements from the Veteran. 

The Veteran was afforded an adequate February 2009 VA orthopedic examination with July 2014 addendum. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The July 2014 addendum reflects a detailed review of record in light of the Veteran's assertions of chronic symptoms and provide a plausible explanation for rejecting the Veteran's assertions of chronicity. VA fulfilled its duty to provide adequate medical opinions.

The record reflects substantial compliance with the May 2014 Board remand. See Stegall v. West, 11 Vet. App. 268 (1998); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required). The AOJ obtained July 2014 VA addendum medical opinion for the claimed neck disability that was responsive to the remand instructions. The actual supplemental statement of the case (SSOC) is not of record. However, available correspondence shows that the Veteran and his representative reviewed the SSOC. (January 2015 representative Due Process Waiver; February 2015 Veteran SSOC response). In this instance, these records are adequate to show that the AOJ readjudicated the claims and provided notice to the Veteran and his representative. 

Accordingly, the Board finds that the duty-to-assist requirements under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c) have been satisfied.




Service connection laws and regulations

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); 38 C.F.R. § 3.303. 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third elements for 38 C.F.R. § 3.309(a) chronic diseases is through a demonstration of continuity of symptomatology. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013), overruling Savage v. Gober, 10 Vet. App. 488, 495-96 (1997) (applying 38 C.F.R. § 3.303(b) to a chronic disease not listed in 38 C.F.R. § 3.309(a) as "a substitute way of showing in-service incurrence and medical nexus."). Although none of the disabilities were manifested within the applicable time period (first post-service year), the alternative 38 C.F.R. § 3.303(b) continuity of symptomatology provisions for establishing a nexus must be considered. Id.

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

The United States Court of Appeals for the Federal Circuit has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence"). 

In relevant part, 38 U.S.C.A. 1154(a) (West 2002) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b).


 (1) Acquired psychiatric disability, to include PTSD

Additional regulations govern PTSD claims. 38 C.F.R. § 3.304(f). The record must include (1) medical evidence diagnosing PTSD in conformance with the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (DSM-IV) criteria; (2) a link, established by medical evidence, between a Veteran's present symptoms and an in-service stressor; and (3) credible supporting evidence that the claimed in-service stressor actually occurred. Id.; Cohen v. Brown, 10 Vet. App. 128, 139 (1997).

If a stressor claimed by a Veteran is related to that Veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of PTSD and that a Veteran's symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of that Veteran's service, a Veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. 38 C.F.R. § 3.304(f)(3).

 "[F]ear of hostile military or terrorist activity" means that a Veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the Veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the Veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror. See id.

As relevant, a valid service connection claim must include competent evidence of a current disability, which in this case would be a PTSD diagnosis in conformance with the DSM-IV PTSD diagnostic criteria. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); 38 C.F.R. § 3.304(f). (The Board recognizes that the Veterans Benefits Administration now utilizes DSM-5; however, the VA Secretary has indicated that the change does not apply to claims pending before the Board, such as this one. 79 Fed. Reg. 45094 (Aug. 4, 2014)). The requirements of a current disability may be met by evidence of symptomatology at the time of filing or at any point during the pendency of the claim. McClain v. Nicholson, 21 Vet. App. 319, 323 (2007). 

STRs do not show any complaints or treatment for a psychiatric disorder. However, personnel records reflect that the Veteran served in Vietnam from September 1970 to May 1972 and participated in two counter offensive campaigns. He reports that he experienced fear of hostile military activity during his tour of duty in Vietnam. His stressor report is plausible and consistent with the places, types, and circumstances of his service. An in-service event is demonstrated. 

The remaining issue is whether the Veteran has a current PTSD diagnosis related to the in-service stressor. Again, the "current disability" requirement is satisfied if a PTSD diagnosis is shown at any time during the claims period, which in this case begins in July 2008. McClain, supra. 

October 2010 VA PTSD examination report reflects that the Veteran did not have a PTSD diagnosis. The examiner cited the quantitative PTSD test results and discounted the treating clinicians' reports based upon their inherent biases in the course of active treatment. July 2014 VA PTSD examination report shows that the Veteran did not have a current PTSD diagnosis. The examiner again cited the objective testing and discounted the treating clinicians' statements based upon their emphasis on subjective reports. 

In November 2014, Dr. L. (a VA physician) submitted a letter in support of the claim. She recounted the Veteran's Vietnam stressors and reported that three different doctorate-qualified VA clinicians had treated the Veteran and diagnosed PTSD. She also reported that the Veteran had quantitative testing for PTSD symptoms and the results were positive for diagnosis. 

Reviewing the record as a whole, the Board finds the evidence to be in a state of relative equipoise on whether a current PTSD diagnosis is shown. The benefit of the doubt is resolved in favor of the Veteran to find a current PTSD diagnosis related to Vietnam stressors. Service connection for PTSD is granted. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 3.304(f).

(2) Neck disability

STRs do not show any orthopedic complaints or treatment for neck pain. However, they do show several instances of low back and mid back pain following injuries. A May 1977 X-ray report confirms a compression fracture of the thoracic spine. January 1984 orthopedic evaluation reflects that the Veteran had a six year history of low back pain following a motor vehicle accident (MVA). He did not report any neck pain. April 1984 MEB examination did not note any cervical spine abnormality. 

January 1985 VA general medical examination noted a back injury from November 1976. The examiner diagnosed lumbar disc disease secondary to MVA. 

June 2002 VA treatment records reflect that the Veteran reported a history of neck pain beginning in 1984.

April 2003 private neurology records detail the Veteran's orthopedic disabilities. He was not reported to have any cervical spine disability. 

April 2003 VA orthopedic examination reflects that the Veteran reported having neck pain associated with the in-service MVA. He denied any upper extremity pain. He was informed that he had spurs in his neck, but had not received any follow-up treatment. Clinical examination was significant for pain in the dorsal cervical area. The examiner assessed cervical degenerative joint disease. 

July 2008 private magnetic resonance imaging (MRI) study of the cervical spine confirmed degenerative disc disease. 

September 2008 VA physical therapy records reflect that the Veteran had a multi-year history of neck pain with increased symptoms beginning about 3 years ago. The examiner assessed cervical degenerative disc disease with forward head posture. 

The Veteran was afforded a February 2009 VA orthopedic examination. He reported injuring his neck in service, citing a MVA and 1980 fall. Following evaluation, the examiner diagnosed cervical degenerative disc disease. The medical opinion accompanying the diagnosis is inadequate for adjudication purposes and will not be considered. 

VA PCC records from July 2009 to February 2011 reflect occasional complaints of neck pain. 

VA obtained another medical opinion in July 2014. The examiner reviewed the claims folder and recited the pertinent medical history. She expressed a negative medical opinion. She explained that degenerative disc disease is mostly related to age, genetics, and body weight and cited medical literature to support her report. She noted that the April 1984 MEB was silent for any neck disability and the initial report of neck pain shown in medical records occurred in 2002. 

Upon review, the Veteran did not specifically report neck pain in service, but he had several low back and thoracic spine injuries. These injuries satisfy the initial element of an in-service event. He is currently diagnosed with cervical disc disease. Consequently, the remaining issue is a nexus to service. 

The weight of the evidence is against a continuity of symptomatology beginning in service or a nexus for the current neck disability. In this case, the Veteran is competent to report neck pain and his recollections of it. Jandreau, supra. The issue is the probative value of his reports regarding chronic neck pain symptoms. As explained below, when his reports are considered in light of the entire record, they are not persuasive. Caluza, 7 Vet. App. at 510-511 (VA adjudicators may properly consider internal inconsistency, facial plausibility and consistency with other evidence submitted on behalf of the Veteran in weighing evidence).

STRs show that the Veteran was able to seek orthopedic treatment in service and report his current symptoms to treating clinicians. He did not identify neck pain. He also presented for a January 1985 VA examination and did not identify neck pain. It is reasonable to infer that the Veteran would have reported neck pain to these clinicians and the January 1985 VA examiner if such symptoms were chronic or otherwise bothersome. Buczynski v. Shinseki, 24 Vet. App. 221, 224 (2011) (silence in medical records may be relevant evidence that symptoms were not present if the record would normally have recorded such symptoms). The Board does not find the Veteran's reports that he had chronic neck pain in service probative, but will consider reports about intermittent neck pain symptoms in service. See id.; Caluza, 7 Vet. App. at 510-511. 

Thus, the issue becomes whether the current degenerative disc disease of the neck is related to the in-service injuries and intermittent neck pain. On this issue, the Board finds the July 2014 medical opinion more persuasive than the Veteran's assertions. King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012). In this case, the examiner is qualified as a medical doctor. She has clinical experience and is unbiased in the outcome of the claim. Meanwhile, the Veteran is not a medical professional and has a pecuniary bias in his assertions. See Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991). 

The July 2014 VA examiner reviewed the claims folder and considered the Veteran's medical history in detail and assertions of neck pain beginning in service. She provided a negative opinion on any possible etiological relationship and detailed why this was so. It is reasonable to infer from her report that post service factors of age, genetics, and body weight were the most likely causes of the current disability as opposed to any in-service injury or recollections of intermittent neck pain in service. Overall, the July 2014 VA examiner's medical opinion is supported by a plausible rationale and uncontroverted by any additional medical evidence of record. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The Board finds the July 2014 VA examiner's opinion to be highly probative and heavily weigh against the claim. King, 700 F.3d at 1345; Caluza, 7 Vet. App. at 510-511.

In summary, the preponderance of the probative evidence weighs against the claim. The benefit-of-the-doubt doctrine is therefore not helpful to the Veteran. The claim for service connection for a neck disability must be denied. See 38 U.S.C.A. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. at 55-57. 


ORDER

Service connection for PTSD is granted, subject to governing criteria applicable to the payment of monetary benefits.

Service connection for a neck disability is denied. 


REMAND

Pursuant to the Board's May 2014 remand, VA obtained another medical opinion for hypertension in July 2014. The VA examiner provided a negative medical opinion, but did not address whether the current hypertension was related to herbicides exposure. 

Hypertension is not listed under 38 C.F.R. § 3.309(e) as a condition for which presumptive service connection for herbicide exposure may be granted. Although ischemic heart disease has been added to the list of diseases presumed to be associated with a history of exposure to herbicide agents, VA has declined to extend that presumption to hypertension. See Diseases Associated with Exposure to Certain Herbicide Agents (Hairy Cell Leukemia and Other Chronic B-Cell Leukemias, Parkinson's Disease and Ischemic Heart Disease), 75 Fed. Reg. 53202, 53204 (Aug. 31, 2010). In December 2010, VA's Secretary reiterated that service connection for hypertension, among other diseases identified in the July 24, 2009, National Academy of Sciences (NAS) report, "Veterans and Agent Orange: Update 2008," was not warranted based on exposure to herbicides used in the Republic of Vietnam during the Vietnam Era. See Health Outcomes Not Associated With Exposure to Certain Herbicide Agents; Veterans and Agent Orange: Update 2008, 75 Fed. Reg. 81332, 81333 (Dec. 27, 2010). Based upon the findings in the NAS report, VA amended 38 C.F.R. § 3.309(e) for the express purpose of adding a Note to § 3.309(e) clarifying that the term "ischemic heart disease" does not include hypertension. See 75 Fed. Reg. 53202, 53216. 

Nevertheless, the unavailability of presumptive service connection for a disability based on exposure to herbicides does not preclude a veteran from establishing service connection with proof of direct causation. Combee v. Brown, 34 F.3d 1039, 1044 (Fed. Cir. 1994). The NAS has concluded that there is limited or suggestive evidence of an association between exposure to Agent Orange and hypertension. See NAS, Institute of Medicine , Veterans & Agent Orange: Update 2010 (2011). Furthermore, the Secretary has noted that the NAS concluded in 2006 that there was limited or suggestive evidence of an association between exposure to herbicides and hypertension. See 75 Fed. Reg. 32540, 32549 (June 8, 2010). It was also noted by the Secretary that in 2008 the NAS found there was limited or suggestive evidence of an association between herbicide exposure and hypertension. This category is defined to mean that evidence suggests an association between exposure to herbicides and the outcome, but a firm conclusion is limited because chance, bias, and confounding could not be ruled out with confidence. See 75 Fed. Reg. 81332, 81333 (Dec. 27, 2010). 

Given the above, the Board finds that a VA medical opinion specifically addressing whether there is any etiologic relationship between the Veteran's hypertension and his exposure to herbicides in service is necessary.

Accordingly, this case is REMANDED for the following actions:

1. Return the claims file to the examiner who conducted the Veteran's July 2014 examination. If that examiner is not available, arrange for a review of the claims file by another qualified examiner. The examiner should be requested to provide an opinion concerning the following:

Is it at least as likely as not that the Veteran's hypertension is etiologically related to his presumed exposure to herbicides in service.

The examiner must accompany any opinion with a complete rationale. The examiner is hereby advised that the National Academy of Sciences has concluded that there is limited or suggestive evidence of an association between exposure to Agent Orange and hypertension.

2. Thereafter, and after undertaking any other indicated development, readjudicate the remaining claim on appeal. If the benefit sought on appeal remains denied, issue the Veteran and his representative a supplemental statement of the case, and afford them an appropriate opportunity to respond. 

The case should then be returned to the Board for further appellate consideration, if otherwise in order. By this remand, the Board intimates no opinion as to any final outcome warranted. No action is required of the Veteran until he is notified by the AOJ. The Veteran and his representative have the right to submit additional evidence and argument on the matter the Board has remanded to the AOJ. Kutscherousky v. West, 12 Vet. App. 369(1999). 

This case must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the U.S. Court of Appeals for Veterans Claims (Court) for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B , 7112 (West 2014). 



____________________________________________
Thomas H. O'Shay
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs