# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-3000

FRANK E. BUCZYNSKI, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 3, 2010                                    Decided January 6, 2011)

*Todd M. Wesche*, of Arlington, Virginia, for the appellant.

*Elizabeth Long*, with whom *Will A. Gunn,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Leslie C. Rogall,* Deputy Assistant General Counsel; and *Michael A. Carr*, Senior Appellate Attorney, were on the briefs, all of Washington, D.C., for the appellee.

Before MOORMAN, LANCE, and DAVIS, *Judges*.

LANCE, *Judge*:  The appellant, Frank E. Buczynski, through counsel, appeals an August 14, 2008, Board of Veterans' Appeals (Board) decision denying his claims for an evaluation in excess of 30% for a service-connected skin condition from January 1994 to August 2002, and for an evaluation in excess of 60% for a service-connected skin condition from August 2002.  Record (R.) at 3-13.  In his brief, the appellant expressly stated that he abandoned his appeal regarding a higher rating for the period after August 2002, therefore, that part of the Board's decision is not on appeal. Appellant's Brief (Br.) at 2.  This appeal is timely, and the Court has jurisdiction over the case pursuant to 38 U.S.C. §§ 7252(a) and 7266.  For reasons stated below, the Court will vacate in part the August 14, 2008, Board decision and remand the matter of a higher rating from January 1994 to August 2002 because the Board erred in failing to provide an adequate statement of reasons or bases for its conclusion that, from January 1994 to August 2002, the appellant's skin condition was not "exceptionally repugnant" under 38 C.F.R. § 4.118, Diagnostic Code (DC) 7806 (1995).

# I. FACTS

The appellant served honorably in the U.S. Army from March 1943 to March 1946. R. at 596. In 1945, he suffered exposure to chemicals that caused irritation to his skin. R. at 1088. In 1995, he filed a claim for service connection for a skin condition. R. at 1199-1200. In March 2004, he was awarded service connection for lichen simplex chronicus with hyperkeratosis of the ankles and feet. R. at 771-77. His condition was rated by analogy under DC 7806 for dermatitis or eczema. R. at 7. He received a 10% disability rating, effective January 4, 1995. In December 2006, this was increased to 30% effective January 4, 1995, and to 60% effective August 30, 2002. R. at 176-83. The 60% disability rating was assigned pursuant to a change in the applicable diagnostic code that became effective on August 30, 2002. R. at 179-80.

The relevant medical evidence of record includes a July 1997 VA examination report in which the examiner stated that "[t]he skin of both feet is intact and is warm and dry with no discoloration, inflammation, ulceration or soft tissue swelling." R. at 1173-74. In September 1998, a VA examiner stated that the appellant suffered from "lichenified eczematous eruptions over the circumference of the ankles bilaterally and extending down into the instep. The entire sole is thickened as is the eczema previously mentioned. There are fissures, oozing, bleeding, excoriatory marks, and scaling." R. at 1088. The examiner also noted that the appellant had used "Synalar cream for decades in order to relieve the symptoms. If he does not use this preparation he immediately begins to have symptoms." R. at 1088. The examiner also noted that the appellant's toenails were "completely normal" and that he had "no rash between the toes." R. at 1088.

On August 14, 2008, the Board issued the decision here on appeal. R. at 3-13. The Board found that prior to August 30, 2002, the appellant's lichen simplex chronicus with hyperkeratosis of the ankles and feet was not manifested by ulceration, extensive exfoliation, or crusting with systemic or nervous manifestations. R. at 5. The Board stated:

> Evaluating this evidence with the criteria in effect prior to August 30, 2002, the Board finds that an increase to a 50 percent disability evaluation is not warranted. The medical evidence of record, including both examination reports and treatment notes, does not show any findings of ulceration, or extensive exfoliation or crusting with systemic or nervous manifestations. In fact, although the skin of the feet was described as fissured, oozing, bleeding, excoriated and scaling in September 1998, on VA examination of the feet in July 1997 the skin of the feet was described as intact, warm, and dry, with no discoloration, inflammation, ulceration or soft tissue

2

swelling.  None of the treatment records and none of the examiners characterize the skin condition as repugnant.  As the disability is essentially confined to the skin of the feet and ankles and it was not extensive or exceptionally repugnant, the criteria for an increased rating under the old criteria are not shown.

R. at 8-9.  Accordingly, the Board denied his claim.


## II.  PARTIES' CONTENTIONS

The appellant asserts that "[t]he Board points to no medical evidence" to support the finding that "the appellant's [skin condition] was not exceptionally repugnant" and that the Board "relie[d] solely on the absence of evidence as negative evidence on this issue."  Appellant's Br. at 5-6.  He also asserts that the Board failed to provide an adequate statement of the reasons or bases for its decision. Appellant's Br. at 4.  In response, the Secretary argues that the appellant has failed to demonstrate error and that the Board provided an adequate statement of reasons or bases.  Secretary's Br. at 3.  Prior to oral argument, both parties agreed: (1) that the term "exceptionally repugnant," as used in DC 7806 (1995), is a subjective determination and is not a medical term; (2) that the Board is competent to determine whether a skin condition is "exceptionally repugnant"; and (3) that an explicit medical determination in regard to the issue of exceptional repugnance is not required.  Secretary's Supplemental (Supp.) Br. at 2-5; Appellant's Nov. 2, 2010, Notification at 1.


## III.  ANALYSIS

### A.  Criteria for 50% Rating under DC 7806 (1995)

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity from specific injuries or combination of injuries.  38 U.S.C. § 1155; 38 C.F.R. § 4.1 (2010).  If two evaluations are potentially applicable, "the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating.  Otherwise, the lower rating will be assigned."  38 C.F.R. § 4.7 (2010). Under the version of DC 7806 in effect when the appellant filed his claim, a 50% disability rating for eczema is awarded when either (1) the condition manifests with "ulceration or extensive exudation or crusting, and systemic or nervous manifestation," or (2) the condition is "exceptionally repugnant." 38 C.F.R. § 4.118, DC 7806 (1995).  The first prong is, therefore, an objective assessment, based on the

severity of the appellant's medical symptoms. The second prong is a subjective assessment based on how others respond to the appellant's condition. Neither the regulations nor the Court's precedential case law provides any guidance as to how the second prong of the test is to be interpreted or applied.

The assignment of a disability rating is a factual finding that the Court reviews under the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Johnston v. Brown*, 10 Vet.App. 80, 84 (1997). Under this standard, the Court "will not disturb a Board finding unless, based on the record as a whole, the Court is convinced that the finding is incorrect." *Hood v. Shinseki*, 23 Vet.App. 295, 299 (2009); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (noting that "'the [Court] may not reverse [a factual finding] even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985))).

### B. Board's Assessment of the Evidence

The appellant asserts that "although the Board recognized that the medical evidence does not establish the condition as exceptionally repugnant, the evidence also does not establish that the condition was not exceptionally repugnant." Appellant's Br. at 5. He argues that this is error because "the Board [] relie[d] on the absence of evidence as negative evidence regarding whether [his] eczema [was] exceptionally repugnant." *Id.* His argument, phrased another way, is that the Board failed to consider that "none of the examiners stated that the skin condition was not exceptionally repugnant. There was, therefore, an absence of evidence on the question of whether the skin condition was exceptionally repugnant." Appellant's Reply Br. at 3.

When assessing a claim, the Board may not consider the absence of evidence as substantive negative evidence. *See McLendon v. Nicholson*, 20 Vet.App. 79, 85 (2006); *see also Forshey v. Principi*, 284 F.3d 1335, 1363 (Fed. Cir. 2002) (en banc) (Mayer, C.J., dissenting) (distinguishing between the existence of negative evidence and the absence of actual evidence and noting that "[t]he absence of actual evidence is not substantive 'negative evidence'"); *cf.* Fed. R. Evid. 803(7) (noting that the absence of an entry in a record may be evidence against the existence of a fact if it would ordinarily be recorded).

In this case, there does not appear to be any medical reason why a doctor would be expected to comment on the repugnance of a condition. Therefore, this is not a situation where the silence in regard to a condition can be taken as proof that a doctor did not observe the symptom. In its decision,

4

the Board stated that: "None of the treatment records and none of the examiners characterize the skin condition as repugnant." R. at 9. A plain reading of this statement leads the Court to conclude that the Board's only possible explanation for its determination that the appellant's skin condition was not exceptionally repugnant was that neither the treatment records nor the medical examiners had characterized the condition in those words. Therefore, the Board erred by treating the absence of evidence as negative evidence that Mr. Buczynski's skin condition was not exceptionally repugnant, because this is not a situation where silence in the records tends to disprove the fact. *See* Fed. R. Evid. 803(7), *supra*.

### C. Reasons or Bases for the Board's Conclusion

The appellant also argues that the Board failed to provide an adequate statement of the reasons or bases for its conclusion that his skin condition was not "exceptionally repugnant" between 1995 and 2002. Appellant's Br. at 4. The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57. To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*. The Board must explain, in the context of the facts presented, the rating criteria used in determining the category into which a claimant's symptoms fall; it is not sufficient to simply state that a claimant's degree of impairment lies at a certain level without providing an adequate explanation. *Hood v. Brown*, 4 Vet.App. 301, 302-03 (1993); *see Cox v. Brown*, 6 Vet.App. 459, 461-62 (1994) (Board's explanation was adequate when it based rating determination on language and findings of relevant medical evidence); *McGhee v. Brown*, 5 Vet.App. 441, 444 (1993) (Board's explanation was inadequate when it failed to discuss evidence in context of rating schedule criteria).

In this case, the Board reiterated the findings of the September 1998 VA examiner, then discussed how those findings compared with the criteria under DC 7806 in effect prior to August 2002. R. at 8. The Board noted that the criteria for a 50% rating required "[1] ulceration or extensive

exfoliation or crusting, and systemic or nervous manifestations, or [2] an exceptionally repugnant condition."  R. at 7.

### 1. *Objective Criteria*

In regard to the first, objective, part of the test, the Board explained that after reviewing "both examination reports and treatment notes," it found no evidence of ulceration, extensive exfoliation or crusting, or systemic or nervous manifestations.  R. at 8.  The Board noted further that although the September 1998 examination described the skin on the appellant's ankles and feet as "fissured, oozing, bleeding, excoriated, and scaling," the July 1997 examination described the skin as "intact, warm, and dry, with no discoloration, inflammation, ulceration or soft tissue swelling."  R. at 9.  In regard to whether the exfoliation was "extensive," the Board noted that "the disability is essentially confined to the skin of the feet and ankles."  R. at 9.  The Board concluded that "the criteria for an increased rating under the [1995] criteria are not shown."  R. at 9.  Based on the foregoing analysis, the Court concludes that the Board provided an adequate statement of the reasons or bases for this conclusion in regard to the first, objective, part of the test for a 50% rating.

### 2. *Subjective Criteria*

In regard to the second, subjective, part of the test, the Board noted that "[n]one of the treatment records and none of the examiners characterize the skin condition as repugnant," then concluded that the disability was not exceptionally repugnant.  R. at 9.  At oral argument, the Secretary's counsel argued that the Board based this conclusion, in part, on the fact that "the disability [was] essentially confined to the skin of the feet and ankles and it was not extensive."  R. at 9.  However, the Court concludes that this statement by the Board is more reasonably construed as an assessment of the criteria for the first, objective, prong of the diagnostic code, which expressly contains the requirement of "*extensive* exfoliation or crusting." DC 7806 (1995) (emphasis added).  As stated above, the Board's only possible explanation for its conclusion that the appellant's skin condition was not exceptionally repugnant was that neither the treatment records nor the medical examiners had characterized the condition in those words.  R. at 9.

The Court holds that the Board failed to provide an adequate statement of the reasons or bases for its finding that the appellant's skin condition was not "exceptionally repugnant" when the Board's only explanation was the lack of that specific phrase in the medical opinions of record.  When words are objective and have a precise medical meaning, then an examiner may be required to use those words

to provide an adequate opinion. When words are subjective and do not have a precise medical meaning, then a medical opinion is adequate when the examiner provides sufficient detail so that the rating specialist can interpret the report and make a subjective determination as to whether the condition meets the rating criteria. *See Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007) (medical examiners fulfill their role when they describe a claimant's symptoms "in sufficient detail so that the Board's '"evaluation of the claimed disability will be fully informed one"'") (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994)); *Moore v. Nicholson*, 21 Vet.App. 211, 218 (2007) (Board fulfilled its role when it interpreted the medical evidence of record and determined how a disability translated into a specific disability rating pursuant to the applicable diagnostic code), *rev'd on other grounds by Moore v. Shinseki*, 555 F.3d 1369 (Fed.Cir. 2009); *cf.* 38 C.F.R. § 4.2 (2010) ("Different examiners, at different times, will not describe the same disability in the same language. [. . .] It is the responsibility of the rating specialist to interpret reports of examination . . . .").

In this case, the July 1997 and September 1998 medical examiners described the appellant's skin condition in sufficient detail so that the Board should be able to provide an informed determination as to whether the condition was "exceptionally repugnant" between 1995 and 2002, under DC 7806 (1995). It remains for the Board to make this determination and to support its decision with an adequate statement of the reasons or bases for its findings and conclusions. *See* 38 U.S.C. § 7104(d)(1); *Allday* and *Gilbert*, both *supra*. As the Court notes above, the term "exceptionally repugnant" as used in DC 7806 (1995) is not a medical term and the Board is competent to make this determination based on the description of the condition as contained in the record.

## D. Assessment of "Exceptional Repugnance"

The regulatory history provides guidance for assessing whether a condition is "exceptionally repugnant" under DC 7806 (1995). In 1993, a Proposed Rule was issued that involved only non-substantive revisions, and that provided the following criteria for 30% and 50% disability ratings under DC 7806 for dermatitis and eczema:

> With ulceration or extensive exfoliation or crusting, and systemic manifestations, or; so disfiguring as to be repugnant on casual inspection . . . . . . . . . . . . . . . . . . . . . 50

> With exudation or constant itching, or; extensive lesions, or; so disfiguring as to be disagreeable on casual inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

58 Fed. Reg. 4969-72, 4971. The Proposed Rule would have replaced "exceptionally repugnant" with "so disfiguring as to be repugnant on casual inspection." *Id.* Although this 1993 Proposed Rule for DC 7806 was not adopted as part of the Final Rule, as discussed below, the proposed language is significant because it would have clarified that the correct analysis of "exceptionally repugnant" would focus on the subjective response of a lay observer and how closely or routinely one might observe the condition.

Basing his argument on the regulatory history of DC 7806, the Secretary argues in his supplemental brief and at oral argument that "analysis of the regulatory history clearly demonstrates that the ratings for disfigurement from eczema were contemplated to be limited to skin disorders affecting the head, face, and neck prior to August 2002." Secretary's Supp. Br. at 5.[1] He asserts that the Proposed Rule issued in 1993 supports this analysis because it characterized the changes to DC 7806 as being "no[t] substantive amendment[s]" but only "minor wording changes [to create] clarity *and uniformity with the codes of disfigurement*." 58 Fed. Reg. 4970 (emphasis added). He notes that DC 7800 stated that disfigurement of the head, face, and neck would be evaluated based on the prominence of the general disfigurement. Secretary's Supp. Br. at 5-11. The Secretary argues that because DC 7800 (1995) is limited to disfigurement of the head, face, or neck, and because DC 7806 was to be interpreted "in uniformity" with DC 7800, DC 7806 must also be limited to disfigurement of the head, face, or neck. *Id.*

The Secretary extends the application of "uniformity" too far. First, there is no indication in the specific language of DC 7806 (1995) that it is meant to be limited to conditions that affect the head, face, and neck; this is a significant factor that surely would have been expressly stated in the text of the regulation had that limitation been intended. 38 C.F.R. § 4.118, DC 7806 (1995); *see Breedlove v. Shinseki*, 24 Vet.App. 7 (2010); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05 (1988)), *aff'd*, 5 F.3d 1456

---

[1] In his supplemental brief, the Secretary "acknowledge[d] that this particular regulatory analysis of disfigurement (limiting its application to skin disorders of the head, face, and neck) was not addressed by the Board in its August [2008] decision nor in the briefing prior to this time." Secretary's Supp. Br. at 5. n. 1. However, he argues that "since the Court requested that the Secretary address how the regulatory history 'sheds light' on its first two inquiries, it is necessary to address this aspect of the regulatory history of section 4.118, as well." *Id.*

(Fed. Cir.1993), *aff'd*, 513 U.S. 115 (1994); *see also Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (rules for construing statutes apply equally to construing regulations).

In addition to looking at the text of DC 7806, the Court looks to the overall structure of the regulation for guidance in determining the plain meaning of the regulation. *See Sharp v. Shinseki*, 23 Vet.App. 267, 271 (2009). The fact that there are other, similar sections of the regulation that do specify that a disability must be limited to the head, face, and neck–such as DC 7800 itself–indicates that if the Secretary had intended to limit DC 7806 in a similar manner, he would have included such language in the regulation. *Meeks v. West*, 12 Vet.App. 352, 354 (1999) ("'[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.'") (quoting 2A N. Singer, Sutherland on Statutory Construction § 46.05 (5th ed. 1992)); *cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks omitted). The fact that DC 7806 does not contain such limiting language when DC 7800 does, undermines the Secretary's argument.

In addition, when the Final Rule was eventually published in 2002, the Secretary, in response to comments, made further revisions to some of the criteria "for the sake of clarity and more objectivity." 67 Fed. Reg. 49590 (July 31, 2002). The new criteria under DC 7806 were "based on the extent (in percentage) to which the entire body or exposed areas are affected by the condition or on the treatment required." *Id.* at 49592. Under the new criteria, a 60% disability rating would be assigned if "more than 40[%] of the entire body or more than 40[%] of exposed areas [were] affected." *Id.* Therefore, the new version of DC 7806 that was published in 2002 is explicitly not limited to conditions that affect the head, face, and neck, and yet the Secretary's Supplementary Information for the revision in the Final Rule makes no mention of this being a substantive change. 67 Fed. Reg. 49590-92. Therefore, the regulatory history does not support a bright-line rule that restricts compensation under DC 7806 (1995) to conditions that affect the head, face, or neck, and the Court rejects such an interpretation. Moreover, the Secretary, in adjudicating the appellant's claim, selected DC 7806 and rated the appellant's condition by analogy using that diagnostic code. R. at 7.

However, it is apparent from both the plain language of DC 7806 and the regulatory history that the prominence of a claimant's skin condition is a factor that may be considered when assessing

9

whether a condition is "exceptionally repugnant" under DC 7806 (1995). The Court agrees that "[a] determination regarding exceptional repugnance is not necessarily conditioned on the actual current disease process . . . ." Secretary's Supp. Br. at 3. Rather, it is a determination of how a lay observer would subjectively respond to the appellant's disability. The percentage of visible areas of the body affected should not be the only factor in this determination. For example, a skin condition that is essentially confined to the feet and ankles might still be considered "exceptionally repugnant" if the appellant were wearing shorts or sandals, or was barefoot, or if he suffered from extensive oozing that seeped through his trousers, or if his condition created an odor that was repugnant despite the skin condition not being visible. On remand, the Board must carefully consider these and any other factors it deems relevant and provide an adequate statement of reasons or bases for its findings and conclusions.

### E. Summary

Accordingly, the Court will vacate the August 14, 2008, Board decision denying a rating higher than 30% for the appellant's service-connected skin condition for the period from January 1994 to August 2002 and remand the matter for readjudication. On remand, the appellant is free to submit additional evidence and argument, including the arguments raised in his briefs to this Court, in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B, 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court).

## IV. CONCLUSION

After consideration of the appellant's and the Secretary's briefs, and a review of the record, the Board's August 14, 2008, decision is VACATED in regard to the appropriate disability rating from January 1994 to August 2002 and the matter is REMANDED to the Board for further proceedings consistent with this opinion. The decision is otherwise AFFIRMED.