http://www.va.gov/vetapp16/Files5/1639902.txt

Citation Nr: 1639902 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 10-43 177 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California

THE ISSUE

Entitlement to service connection for the cause of the Veteran's death. 

REPRESENTATION

Appellant represented by: National Association of County Veterans Service Officers

WITNESSES AT HEARING ON APPEAL

The appellant and D.H.

ATTORNEY FOR THE BOARD

J. Rutkin, Counsel

INTRODUCTION

The Veteran completed an honorable career in the U.S. Navy, serving on active duty from July 1954 to May 1975. He died in November 2006. The appellant is his surviving spouse. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions dated in March 2008 and March 2009 of the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California. The Board remanded this case in September 2015 for further development. 

The appellant and D.H. testified at a hearing before the undersigned in September 2015. A transcript is of record. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

1. The Veteran had service on the landmass of Vietnam during the Vietnam Era and is presumed to have been exposed to an herbicide agent.

2. The Veteran's diabetes mellitus, type II (diabetes), is presumed to have been incurred in active service due to herbicide exposure. 

3. The Veteran's diabetes contributed substantially or materially to the cause of death. 

CONCLUSION OF LAW

The criteria for service connection for the cause of the Veteran's death are satisfied. 38 U.S.C.A. §§ 1110, 1113, 1116, 1310, 5107 (West 2014); 38 C.F.R. §§ 3.5, 3.102, 3.303, 3.307, 3.309, 3.312 (2016).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The appellant seeks service connection for the cause of the Veteran's death. Specifically, she states that the Veteran's diabetes contributed substantially or materially to the cause of death, and that his diabetes should be found service connected due to service on the landmass of Vietnam and the presumption of herbicide exposure based on such service. For the following reasons, the Board finds that service connection for the cause of death is established. 

When a veteran dies of a service-connected disability, the veteran's surviving spouse is eligible for disability and indemnity compensation (DIC) benefits for the cause of death. 38 U.S.C.A. § 1310; 38 C.F.R. §§ 3.5(a), 3.312. In order to establish service connection for the cause of death, the evidence must show that a disability incurred in or aggravated by service was either the principal cause of death or a contributory cause. 38 C.F.R. § 3.312(a). A contributory cause of death is inherently one not related to the principal cause. 38 C.F.R. § 3.312(c). In determining whether the service-connected disability contributed to death, it must be shown that it contributed substantially or materially to the cause of death. Id.

Entitlement to DIC benefits for the cause of a veteran's death may be established by showing that a disability for which service connection has already been granted was the principal or a contributory cause of death. Hupp, 21 Vet. App. at 352. Otherwise, the claimant must first establish service connection for a disability shown to have caused or contributed to the veteran's death. Id. (observing that "where service connection has not been previously established, the DIC claimant must first establish service connection for the cause of the veteran's death"). 

The Veteran's original death certificate reflects that adenocarcinoma was the immediate cause of death. However, an amendment to the death certificate reflects that diabetes mellitus, type II was a significant condition contributing to death. Resolving reasonable doubt in favor of the claim, the Board finds that the Veteran's diabetes contributed substantially or materially to the cause of death based on the amended death certificate. See 38 C.F.R. §§ 3.102; 3.312; cf. BVA Manual, M21-1, IV.iii.2.A.1.B (providing that DIC benefits for the cause of death should be granted when the death certificate reflects that a principal or contributory cause of death matches a service-connected disability); but see 38 C.F.R. § 19.5 (2016) (providing, in relevant part, that the Board is not bound by Department manuals, circulars, or similar administrative issues). 

The issue, then, is whether service connection can be established for the Veteran's diabetes. See Hupp, 21 Vet. App. at 352. 

Service connection means that a veteran has a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge when the evidence shows that the disease was incurred in service. 38 C.F.R. § 3.303(d). Entitlement to service connection is established when the following elements are satisfied: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or "medical nexus" between the current disability and the disease or injury incurred or aggravated during service. Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); see 38 C.F.R. § 3.303(a). 

There is also a presumption of service connection for certain diseases, including diabetes mellitus, type II, found to be associated with exposure to an herbicide agent such as that used in Agent Orange. See 38 U.S.C.A. § 1116; 38 C.F.R. § 3.309(e); cf. Determinations Concerning Illnesses Discussed in National Academy of Sciences Report: Veterans and Agent Orange: Update 2012, 79 Fed. Reg. 20, 308, 20,312 (April 11, 2014). Absent affirmative evidence to the contrary, such diseases will be service connected even if there is no evidence of the disease during service, provided that herbicide exposure is established. Id.; 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307(d). The term "herbicide agent" means a chemical in an herbicide, including Agent Orange, used in support of the United States and allied military operations in the Republic of Vietnam during the period beginning on January 9, 1962 and ending on May 7, 1975 (the Vietnam Era). 38 C.F.R. § 3.307(a)(6). A veteran who, during active military service, served in the Republic of Vietnam during the Vietnam Era is presumed to have been exposed to an herbicide agent. 38 U.S.C.A. § 1116(f); 38 C.F.R. § 3.307(a)(6).

A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence on any issue material to the claim. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102 (providing, in pertinent part, that reasonable doubt will be resolved in favor of the claimant). When the evidence supports the claim or is in relative equipoise, the claim will be granted. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990); see also Wise v. Shinseki, 26 Vet. App. 517, 532 (2014). If the preponderance of the evidence weighs against the claim, it must be denied. See id.; Alemany v. Brown, 9 Vet. App. 518, 519 (1996). 

The Veteran's service department records do not show duty assignments to Vietnam or citations sufficient to establish Vietnam service. Nevertheless, the Board finds that there is sufficient evidence based on the circumstances of the Veteran's service and the testimony provided to conclude that the Veteran set foot in Vietnam. In this regard, in a recent precedential decision, the Court of Appeals for Veterans Claims (Court) emphasized the fact that circumstantial evidence may be sufficient to establish in-country service. See Parseeya-Picchione v. McDonald, 28 Vet. App. 171 (2016). Specifically, the veteran in that case had served in Thailand during the Vietnam Era, and the Court found that the Board's conclusion that the veteran had not set foot in Vietnam must be set aside for failure to address evidence that flights to Thailand from outside Southeast Asia would normally have had a layover in Vietnam. Id. at 176. In other words, because the veteran in that case was presumably transported to Thailand by plane from outside Southeast Asia, the Court found that evidence that the typical flight path included a layover in Vietnam was pertinent to determining whether he had in-country service by virtue of being on a flight that might have stopped temporarily in Vietnam. See id. 

The appellant states that the Veteran had service on land in Vietnam through assignment to Patrol Squadron 50 in 1965 or assignment to VC-5 at Cubi Point from 1970 to 1973. According to her hearing testimony before the undersigned, she remembered the Veteran reminiscing with friends about being in Vietnam. She also submitted a printout from a webpage in which another member of VC-5 commented that it flew between air craft carriers in Yankee Station and Da Nang Harbor, Vietnam between 1969 and 1971, transporting "mail, people, and parts etc." Based on this comment, the appellant believes that the Veteran may have landed in Vietnam to pick up or deliver mail or supplies. She also submitted a statement purportedly from the Veteran's former wife stating that during the period from 1970 to 1973, he was stationed at Cubi Point, Philippines, and "made trips to Da Nang, Vietnam" as a crew member of the VC-5 squadron. 

The Board notes that flying missions over Vietnam air space is not sufficient to establish in-country service for the purpose of the presumption of herbicide exposure. See VAOPGCPREC 7-23 (Aug. 12, 1993); 38 C.F.R. § 3.307(a). However, the appellant's testimony and the statement from the Veteran's former wife assert that the Veteran also landed in Vietnam for the purpose of picking up or delivering mail or supplies. 

The Veteran's service personnel records show that he had occupational specialties as an aircraft structural mechanic and quality assurance inspector. According to an October 2001 VA audiological examination, the Veteran stated that he worked flying sea planes as a flight engineer and crew member, and was also a maintenance chief and division chief for quality control. 

The service personnel records further show that he was assigned to Patrol Squadron 50, and that he was authorized to wear the Vietnam Service Medal for "service aboard the Patrol Squadron 50 during the period" from September 1, 1965 through November 11, 1965. They also show that he was awarded combat pay for serving in a combat zone from October 16, 1965 to November 4, 1965. The National Personnel Records Center (NPRC) stated that it was unable to determine whether the Veteran had in-country service in Vietnam, but noted that he was attached to a Navy Unit, Patrol Squadron 50, and that this unit was credited with Vietnam Service from October 16, 1965 to November 4, 1965, and could have been assigned to a ship or shore. 

In addition, the service personnel records show that the Veteran was assigned to the Fleet Composite Squadron (FLECOMPRON), detachment 5 (VC-5) at Cubi Point, from October 1970 through November 1973. 

In response to inquiries from the RO, the U.S. Army and Joint Services Records Research Center (JSRRC) stated that it researched the command history for Patrol Squadron 50 (VP-50) from September 1, 1965 to March 14, 1967. According to the JSRRC, the history showed that the VP-50 had detachments of the squadron at Cam Ranh Bay, Republic of South Vietnam, among other locations, and that the assigned missions were ocean surveillance air patrols in the South China Sea and Taiwan Straits and market time anti-infiltration patrols in Vietnam. The JSRRC also noted that VP-50 operated in Vietnam, in relevant part, from October 10, 1965 to November 5, 1965. The JSRRC stated that the names of those in the squadron who were assigned to Cam Ranh Bay, Vietnam, were not recorded.

With regard to the Veteran's service in FLECOMPRON VC-5 at Cubi Point, the JSRRC in a separate response stated that this squadron had frequent short-term deployments of aircraft, flight crews, and maintenance and support personnel to South Vietnam and other locations. The VC-5 continued to provide carrier on board delivery (COD) services to aircraft carriers operating at Yankee Station in the Gulf of Tonkin, according to the JSRRC. The JSRRC further stated that the 1971 history revealed temporary duty assignments of a VC-5 detachment to Da Nang, South Vietnam of maintenance personnel. 

The JSRRC findings that the Veteran's units included detachments that had service in Vietnam, the fact that the Veteran was awarded combat pay for serving in a combat zone from October 16, 1965 to November 4, 1965, which is the period of time corresponding to the unit award for Vietnam Service, the fact that he was authorized to wear the Vietnam Service Medal based on this same period of service, the substantial length of time he served in FLECOMPRON VC-5, which according to the JSRRC included detachments that flew missions into Vietnam, and the competent and credible testimony from the appellant and the Veteran's former wife reflecting that the Veteran had reminisced with friends about being in Vietnam and had stated that he flew missions into Vietnam, together constitute probative evidence of a significant likelihood that he set foot in Vietnam at some point during the Vietnam Era. Cf. Parseeya-Picchione, 28 Vet. App. at 176. The printout from a webpage in which another member of the VC-5 squadron commented that it flew between air craft carriers in Yankee Station and Da Nang Harbor, Vietnam between 1969 and 1971, transporting "mail, people, and parts etc" is also consistent with this evidence and further supports in-country service. 

The balance of the evidence therefore supports a finding that the Veteran not only flew over Vietnam air space, but also landed in Vietnam. There is no reason to doubt the competence and credibility of the testimony provided, which is supported by the JSRRC findings based on its review of the Veteran's unit command histories. 

The fact that the service department records do not mention the Veteran by name as a member of a crew that flew into Vietnam, and that the JSRRC could not verify that the Veteran himself was on a mission that included Vietnam service, does not weigh against the claim. See Buczynski v. Shinseki, 24 Vet. App. 221, 224 (2011) (holding that the absence of evidence does not automatically constitute substantive negative evidence). Indeed, the JSRRC indicated that the names of the crew members who served on missions that involved stops or more prolonged service in Vietnam were not generally recorded in the available records, and thus it cannot be expected that the service department records would specifically show that the Veteran himself was on a mission that involved service in Vietnam. Cf. Fountain v. McDonald, 27 Vet. App. 258, 272 (2015) (holding that the absence of a record documenting the fact at issue only weighs against the claim if the fact would ordinarily have been recorded); Horn v. Shinseki, 25 Vet. App. 231, 239, n.7 (2012) (noting that "the absence of evidence cannot be substantive negative evidence without 'a proper foundation . . . to demonstrate that such silence has a tendency to prove or disprove a relevant fact'"). 

In sum, resolving reasonable doubt, the Board finds that the Veteran had in-country service in Vietnam while serving in Patrol Squadron 50 from September 1, 1965 through November 11, 1965, which has been credited with Vietnam service during this period, or while serving in FLECOMPRON VC-5 from 1970 to 1973, which the JSRRC found also included detachments that flew into Vietnam, and based on the competent and credible statements of the appellant and the Veteran's former spouse. See 38 C.F.R. § 3.102; cf. Parseeya-Picchione, 28 Vet. App. at 176.

Because the Veteran had in-country service in Vietnam during the Vietnam Era, his diabetes is presumed to have been incurred in active service based on his presumed exposure to an herbicide agent, as there is no evidence to the contrary. See 38 C.F.R. §§ 3.307(a), 3.309(e). Therefore, service connection for diabetes is established. See id.; 38 C.F.R. § 3.303. Accordingly, as the evidence shows that the Veteran's diabetes contributed substantially or materially to his death, service connection for the cause of death is granted. See 38 C.F.R. § 3.312; Hupp, 21 Vet. App. at 352; see also 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 55. 

ORDER

Service connection for the cause of the Veteran's death is granted. 

____________________________________________
P. M. DILORENZO 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs