NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**LEE A. GREEN,**
*Claimant-Appellant*

**v.**

**ROBERT L. WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-2047

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-4845, Judge Joseph L. Toth.

---

Decided:  April 7, 2020

---

VIRGINIA A. GIRARD-BRADY, ABS Legal Advocates, PA, Lawrence, KS, for claimant-appellant.  Also represented by EVA PERRING.

SOSUN BAE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by JOSEPH H. HUNT, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; MARTIE ADELMAN, Y. KEN LEE, Office of

General Counsel, United States Department of Veterans
Affairs, Washington, DC.

_____

Before PROST, *Chief Judge,* DYK and O'MALLEY, *Circuit
Judges.*

O'MALLEY, *Circuit Judge.*

Lee A. Green ("Green") appeals from a decision of the
United States Court of Appeals for Veterans Claims ("Vet-
erans Court"). The Veterans Court affirmed the Board of
Veterans' Appeals' (the "Board") decision denying Green's
claim for an increased disability evaluation for Green's ser-
vice-connected dermatophytosis for the period after June
24, 2009. Because the Veterans Court did not commit legal
error in affirming the Board's denial and because we lack
jurisdiction to review challenges to the Board's factual de-
terminations or challenges to the application of the facts of
the case to the law, we *affirm*.

## I. BACKGROUND

Green served in the United States Marine Corps from
July 1977 to June 1982. J.A. 12. In September 1998, a
Department of Veterans Affairs ("VA") regional office
("RO") awarded a disability rating of 10 percent, for a ser-
vice-connected skin condition, called dermatophytosis, af-
fecting Green's feet and groin. The RO denied Green
entitlement to service connection for a cardiovascular dis-
order, gastrointestinal disorder, and genitourinary disor-
der. J.A. 28, 94–97. Shortly thereafter, Green filed a notice
of disagreement with the RO's decision.

Between 2000 and 2017, the Board remanded the mat-
ter multiple times for further development of the record.
J.A. 12, 40. During this time, Green was afforded numer-
ous examinations by VA examiners regarding the scope
and extent of his skin disorder. *Id.*; J.A. 36–37 (discussing
the results of Green's February 2007 and August 2007 VA

examinations), J.A. 45–46.  Green was also examined for other conditions, such as his gastritis and left flank pain. J.A. 47–59.  During these examinations, the VA examiner would record Green's complaints and conduct a physical exam.  *See, e.g.*, J.A. 47–49 ("[Green's] knees are hurting . . . He reports he is having some acid reflux and heartburn.").

## A.  The Board's First Decision

On February 2, 2017, the Board: (1) granted an increased rating of 30 percent for service-connected dermatophytosis for the period from August 15, 1998 to June 23, 2009; (2) denied entitlement to service connection for a cardiovascular disability; (3) denied entitlement to service connection for a gastrointestinal disability; and (4) denied entitlement to service connection for a genitourinary disability including prostatitis and epididymitis to include as secondary to service-connected dermatophytosis of the feet and groin.  J.A. 39.

With respect to the increased rating of 30 percent for Green's service connected-dermatophytosis from August 15, 1998 to June 23, 2009, the Board found "that by resolving all reasonable doubt in favor of the Veteran, prior to June 24, 2009, the Veteran's service-connected dermatophytosis was shown to have been manifested by constant itching."  J.A. 38.  The Board noted, however that the evidence did not meet the criteria for a higher evaluation.  *Id.* ("Thus, the criteria for an evaluation of 30 percent, but no higher, have been met prior to June 24, 2009.  As the preponderance of the evidence is against the claim, [] the benefit-of-the-doubt standard of proof does not apply.").

The Board remanded the matter to the RO for the period following June 23, 2009, however, for Green to undergo a new VA examination and to obtain more recent treatment records.  J.A. 40–42.  The Board noted that, on June 23, 2009, an examiner reviewed the results of Green's February 2007 examination with Green for the purpose of

determining the current severity of the dermatophytosis, and the veteran denied any change in his condition. J.A. 40. The Board determined that "the evidence of record [was] clearly stale," and ordered Green "to undergo a VA examination by an appropriate physician to determine the current severity of his dermatophytosis of the feet and groin area." *Id.* Acknowledging that certain conditions, "by their inherent nature, wax and wane and accordingly are sometimes active and other times not," the Board stated that Green should be afforded a VA examination during a period when his condition is most active, if possible. *Id.* ("The Board acknowledges the difficulties in attempting to schedule a compensation examination during a period when the Veteran's skin condition is most 'active.'").

## B. The Board's Second Decision

On November 17, 2017, the Board denied Green's request for a disability rating in excess of 10 percent for dermatophytosis for the period beginning June 24, 2009. J.A. 20. After reviewing the evidence, the Board concluded that Green was not entitled to a higher rating because "he did not have exudation or itching constant [sic], extensive lesions, or marked disfigurement during the pendency of the appeal." J.A. 16. In making its determination, the Board noted that Green had received regular medical care for a variety of conditions from the G.V. (Sonny) Montgomery VA Medical Center, and that the treatment records dated after June 24, 2009 indicated that Green had no current symptoms of dermatophytosis:

> Specifically, treating notes from September 2009, November 2009, and November 2014 indicate that the physical exam showed no rash. Treating records from July 2014 indicate negative findings for the skin and no reports of rashes, sores, or other

lesions. A skin assessment in February 2015 indicated the Veteran's skin was normal.

J.A. 16.

The Board acknowledged that, in February 2017, Green was admitted to the G.V. (Sonny) Montgomery VA Medical Center's emergency room for a rash on his legs and feet. But upon review of the medical report, the Board concluded that, even then, Green's symptoms did not meet the criteria for a 30 percent rating. J.A. 16–17. ("A 30 percent rating is warranted if eczema is accompanied by exudation or itching constant [sic], extensive lesions, or marked disfigurement."). "At worst, during a flare-up, [Green] had an external scaly rash and an erythematous vesicular rash." J.A. 16.

The Board also stated that, after Green underwent a VA examination for his dermatophytosis in May 2017,[1] J.A. 17, the examiner reported that "the Veteran did not have any visible skin conditions and did not have any pertinent physical findings, complications, conditions, signs or symptoms related to his dermatophytosis." *Id.* The examiner's evaluation pointed out, moreover, that in the past 12 months, Green had been treated with immunosuppressive medications and topical medications for less than six weeks. *Id.*

The Board acknowledged that, in letters dated July 2017 and October 2017, a representative noted that Green stated that he "suffers from constant pain and itching, as well as scaling of his feet, due to his service-connected dermatophytosis," which required constant treatment and medication. *Id.* The Board, however, concluded that Green's statement was outweighed by the post-July 2009

---

[1]    The Board states that this examination took place in July 2017, but it appears from the record that it occurred on May 15, 2017. J.A. 23.

treatment records, which did not indicate that Green reported constant pain and itching to his medical providers, or that he required constant medication. *Id.*

"For a rating of 30 percent under the pre-August 2002 regulations, the evidence would have to show exudation or itching constant [sic], extensive legions, or marked disfigurement." *Id.*; *see* 38 C.F.R. § 4.118 (2001). But, according to the Board, the evidence did not demonstrate such symptoms. J.A. 17. Accordingly, based upon the totality of the evidence, the Board concluded that Green's disability failed to meet the criteria for a rating in excess of 10 percent for his dermatophytosis under the pre-2002 regulations.[2]

## C. The Veterans Court's Decision

On appeal to the Veterans Court, Green argued that the Board's reliance on his "lack of complaint" as substantive negative evidence was erroneous. *Green v. Wilkie*, No. 17-4845, 2019 U.S. App. Vet. Claims LEXIS 486, at *2 (Vet. App. Mar. 28, 2019). Green argued that "the majority of these records involved treatment for things other than skin-related issues," and that he therefore had "no occasion or motivation to discuss his [dermatophytosis] condition or medications at those times." *Id.*

---

[2] The Board considered Green's dermatophytosis rating under the pre-2002 version of Diagnostic Code 7813, which provided more favorable criteria to Green than the revised criteria. J.A. 15–16 ("Although an award based on the revised criteria is improper prior to the date that criteria became effective, there is no prohibition against assigning a rating under the older criteria for the entire period on appeal."). The Board also considered Green's dermatophytosis rating under the post-2002 version of Diagnostic Code 7813 and concluded that a higher disability rating is not warranted, but that line of analysis is not at issue here. J.A. 18–19.

In support of his argument, Green cited to *Buczynski v. Shinseki*, 24 Vet. App. 221 (2011), where the Veterans Court held that the Board erred by "treating the absence of evidence as negative evidence that Mr. Buczynski's skin condition was not exceptionally repugnant." 24 Vet. App. at 224. Green argued that, like *Buczynski*, the Board erred by using the absence of complaints as substantive negative evidence that Green did not suffer from constant itching. *Green*, 2019 U.S. App. Vet. Claims LEXIS 486, at *2–3.

The Veterans Court rejected Green's argument. It explained that, in *Buczynski*, the Board's reliance on an absence of evidence was erroneous because there was no reason why Buczynski's doctors would have been expected to comment on the "repugnance" of the veteran's condition. *Id.* at *2–3 (citing *Buczynski*, 24 Vet. App. at 223–24). It was not a case "where silence in the records tends to disprove the fact." *Id.* at *3 (citing *Buczynski*, 24 Vet. App. at 224). The Veterans Court reasoned that Green's silence "does tend to disprove the fact that he had constant pain, itching, and the need for constant medication," however. *Green*, 2019 U.S. App. Vet. Claims LEXIS 486, at *4. According to the court, Green's medical records documented numerous occasions where such complaints would have been appropriate and recorded, and that Green had examinations in 2015 and 2017 which were specifically dedicated to evaluating his skin condition. *Id.* As a result, the Veterans Court concluded that the Board did not clearly err by considering Green's lack of complaints in his medical records as substantive negative evidence because "these were situations where Mr. Green would have been expected to discuss his condition if he was experiencing the symptoms alleged." *Id.*

The Veterans Court further noted that the Board also "used actual evidence—several examination reports showing normal skin—as substantive negative evidence to deny a higher rating." *Id.* at *3. Although other conditions may have precipitated certain VA treatment visits, each visit

also included skin evaluations, which confirmed that Green "had no present rash or other skin conditions." *Id.* at 4.

Because "the evidence predominantly showed that Mr. Green did not exhibit symptoms of a skin condition during the relevant time period," the Veterans Court concluded that the Board's decision was adequate for purposes of review and affirmed. *Id.* at *4–5 ("What's left of his argument is, in substance, a disagreement with how the Board weighed his statements against the medical evidence. As it is the Board's distinct duty to weigh and assess the evidence of record, the Court declines to engage in such review.").

Green timely appealed to this court. We have jurisdiction to review issues of statutory and regulatory interpretation pursuant to 38 U.S.C. § 7292.

## II. DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is limited by statute. *See Githens v. Shinseki*, 676 F.3d 1368, 1371 (Fed. Cir. 2012); *Bernklau v. Principi*, 291 F.3d 795, 800 (Fed. Cir. 2002). We have jurisdiction "to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof . . . and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292 (2002). We may not, however, review (1) a challenge to a factual determination, or; (2) a challenge to a law or regulation as applied to the facts of a particular case, except to the extent that such a challenge presents a constitutional issue. 38 U.S.C. § 7292(d)(2). We "review[] legal determinations of the Veterans Court under a *de novo* standard." *Buchanan v. Nicholson*, 451 F.3d 1331, 1334 (Fed. Cir. 2006).

Green argues that the Veterans Court's opinion was erroneous because the court (1) misinterpreted 38 C.F.R. § 4.118 (2001) by requiring evidence of exudation or

constant itching, extensive lesions, *and* marked disfigurement for purposes of assigning a 30 percent rating; (2) erroneously affirmed the Board's reliance on evidence resulting from evaluations of Green's non-dermatophytosis conditions; and (3) erroneously affirmed the Board's reliance on Green's silence as substantive negative evidence of constant itching. We address each issue in turn.

## A.  38 C.F.R. § 4.118 (2001)

Under the pre-2002 regulation, a 30 percent rating of dermatophytosis is warranted if eczema is accompanied by "exudation or itching constant [sic], extensive lesions, or marked disfigurement." 38 C.F.R. § 4.118 (2001). Green alleges that the Veterans Court's decision is legally erroneous because it misinterpreted the regulation and required "evidence of all four symptoms for the purpose of assigning a 30 percent rating." Appellant Br. 12. In support, Green points to his prior statements, alleging that he suffered from constant itching. *Id.* Green argues that the Court could not have affirmed the Board's decision, "despite evidence that [Green] suffered from constant itching," unless it interpreted the regulation to require evidence of all four symptoms.

Green, however, mischaracterizes the Veterans Court's opinion. The issue before the Veterans Court was not whether 38 C.F.R. § 4.118 required all four symptoms to warrant a 30 percent rating. Rather, the Veterans Court considered whether Green's lack of complaint could be considered as substantive negative evidence. *Green*, 2019 U.S. App. Vet. Claims LEXIS 486, at *2 ("Green's argument centers on the effect of his lack of complaint."). There is no indication that issues concerning the proper interpretation of § 4.118 were before the Veterans Court. The court's opinion "does not address the validity or elaboration of [the regulation], or reflect that a different decision would have resulted had the position urged by appellant been adopted." *Githens*, 676 F.3d at 1372.

In fact, the language of the Veterans Court's decision reflects the correct interpretation of the regulation. In discussing the diagnostic criteria for a 30 percent rating, the opinion states: "a 30% rating is warranted if the skin disorder is accompanied by 'exudation or itching constant [sic], extensive lesions, *or* marked disfigurement.'" *Green*, 2019 U.S. App. Vet. Claims LEXIS 486, at *2 n.1. The Veterans Court emphasized that the "precise basis" of the Board's decision was that "the evidence predominantly showed that Mr. Green did not exhibit symptoms of a skin condition during the relevant time period." *Id.* at *4. In other words, the Veterans Court affirmed the Board's decision because the evidence reflected that Green exhibited *none* of the four symptoms during the period of review.

"We have no jurisdiction over an issue of interpretation that does not exist." *Githens*, 676 F.3d at 1372. In this case, the Veterans Court affirmed the Board's decision, not in spite of evidence demonstrating continuous itching, but because of evidence that Green did not suffer any of the four symptoms, including constant itching. Accordingly, we conclude that the Veterans Court did not misinterpret 38 C.F.R. § 4.118 in its decision. And, to the extent that Green challenges the Board's determination that his testimony was outweighed by the evidence in his medical reports, such a finding is a factual determination—one that we lack jurisdiction to review.

### B. Treatment Records Resulting from Examinations of Green's Other Conditions

Green alleges that the Veterans Court erred when it affirmed the Board's denial because treatment records for medical conditions unrelated to the disability at issue are not "pertinent," even if they contain findings regarding the claimed disability. Appellant Br. 16. In support of his argument, Green cites to 38 C.F.R. §§ 4.1, 4.2, and 4.6, which according to Green, establish that treatment records for

medical conditions unrelated to the disability at issue are not pertinent or relevant.

Green's interpretation of the regulations is unpersuasive. 38 C.F.R. §§ 4.1, 4.2, and 4.6 do not narrow the universe of "pertinent" evidence to treatment records resulting from the examination of the particular disability-at-issue. For example, 38 C.F.R. § 4.1 recites, in relevant part, that, "in the examination and in the evaluation of disability," the disability should be viewed "in relation to its history." Section 4.1, however, does not indicate that the "history" of a disability can only be obtained from medical treatment records reflecting examination for that particular disability. And as we have previously held, the VA may consider a veteran's medical records, even if the underlying examination was not for the purpose of assessing the veteran's disability claim. *See Moore v. Shinseki*, 555 F.3d 1369, 1373 (Fed. Cir. 2009) ("The Veterans Court erred when it determined that Moore's service medical records were not relevant because they pre-dated the period for which he sought disability compensation.").

Similarly, as with section 4.1, sections 4.2 and 4.6 do not limit the type of examination reports that may be considered by the VA or the Board. *See* 38 C.F.R. §§ 4.2 ("It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present."), 4.6 ("Every element in any way affecting the probative value to be assigned to the evidence in each individual claim must be thoroughly and conscientiously studied by each member of the rating board . . . ."). If anything, these regulations, which require the VA to consider "every element in any way affecting the probative value to be assigned to the evidence in each individual claim [for disability]," support the Board's consideration of Green's non-dermatophytosis treatment notes, which show that the physical exam of Green's skin—

even if only done incident to consideration of a different condition—showed no rash, sores, or other lesions. J.A. 16.

By statute, the VA must consider "all information and lay and medical evidence of record in a case before the Secretary." 38 U.S.C. § 5107. In this case, the Board properly considered all of Green's medical records discussing the condition of his skin, weighed that evidence against Green's lay statements, and concluded that the evidence "predominantly showed that Mr. Green did not exhibit symptoms of a skin condition during the relevant time period." *Green*, 2019 U.S. App. Vet. Claims LEXIS 486, at \*4. Accordingly, we conclude that the Veterans Court did not commit legal error in affirming the Board.

## C. Absence of Complaints

Finally, Green argues that the Veterans Court erred when it affirmed the Board's denial because the Board relied on Green's failure to complain as "substantive negative evidence" that Green did not suffer constant pain, itching, and medication requirements. Appellant Br. 13. Green argues that the Board's reliance on silence as substantive negative evidence contravenes our precedent. *Id.* at 18. In addition, Green argues that his failure to complain is not "pertinent evidence" because "[s]uch evidence [does] not tend to prove or disprove the existence of his symptoms at that time." *Id.* at 16. That is, Green asserts that "[t]he Board cannot presume, as a matter of law, that a veteran will complain about symptoms of one condition when he or she is being evaluated for a separate condition." *Id.* at 18.

Green misunderstands our precedent and the determinations of the Veterans Court and the Board. Reliance on silence as substantive negative evidence is not *ispo facto* erroneous. We have explained that the absence of an entry in a record may be admissible if the item or condition ordinarily would be recorded. *See AZ v. Shinseki*, 731, F.3d 1303, 1315 (Fed. Cir. 2013) (citing *Chesapeake & Del. Canal Co. v. U.S.*, 250 U.S. 123, 129 (1919)). The Board may

"weigh the absence of contemporaneous medical evidence against the lay evidence of record." *Buchanan*, 451 F.3d at 1337.

Nor are the facts in this case similar to cases where we have concluded that the Board erroneously relied on an absence of evidence as substantive negative evidence. For example, in *Buchanan v. Nicholson*, 451 F.3d 1331 (Fed. Cir. 2006), on which Green relies, we determined that the Veterans Court erred by affirming the Board's finding "that lay evidence cannot be credible absent confirmatory clinical records to substantiate the facts described in that lay evidence." 451 F.3d at 1337. We explained that the relevant regulatory or statutory provisions did not require both medical and competent lay evidence, and that "competent lay evidence can be sufficient in and of itself." *Id.* at 1335. The facts in *Buchanan* are different from those here. Here, the Board did not rely solely on the absence of complaints in Green's medical records from 2009 to 2017 to conclude that Green did not suffer from constant itching. Rather, the Board considered several reports showing that Green had normal skin as substantive negative evidence to deny a higher rating. We made clear in *Buchanan* that the Board may "weigh the absence of contemporaneous medical evidence against the lay evidence of record." *Id.* at 1337. As the fact finder, the Board "is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself, *i.e.*, because of possible bias, conflicting statements, etc." *Id.*

Similarly, our holding in *AZ v. Shinseki*, 731 F.3d 1303 (Fed. Cir. 2013) does not undermine the Veterans Court's decision. In *AZ*, we explained that "basic evidentiary principles preclude treating the absence of a record of an unreported sexual assault as evidence of the nonoccurrence of the assault." 731 F.3d at 1318. We agreed with the appellants that, in cases where an alleged sexual assault is not reported, the absence of service records documenting the alleged assault is not pertinent evidence that the assault

did not occur." *Id.* But the facts in *AZ* are also distinct from those at issue before us. In this case, the Board relied on the lack of complaints regarding constant pain and itching in reports that *did* exist, and which explicitly recorded the physical condition of Green's skin. J.A. 17. Accordingly, the absence of such evidence is pertinent because "it tends to disprove (or prove) a material fact"—that Green's skin is "normal." *AZ*, 731 F.3d at 1311. As the Veterans Court explained, complaints about constant pain and itching would be expected to have been recorded, particularly because these examinations were conducted with the specific intention of considering Green's dermatophytosis claim. *Green*, 2019 U.S. App. Vet. Claims LEXIS 486, at *4; J.A. 2–3.

Accordingly, we find that the Veterans Court properly determined that the Board did not clearly err by considering the absence of complaints in Green's medical records as substantive negative evidence "because these were situations where Mr. Green would have been expected to discuss his condition if he was experiencing the symptoms alleged." *Green*, 2019 U.S. App. Vet. Claims LEXIS 486, at *4.

### III. CONCLUSION

As explained above, we lack jurisdiction to review challenges to the Board's factual determinations. In addition, the Veterans Court did not legally err when it affirmed the Board's reliance on evidence resulting from examinations of Green's other conditions, or when it determined that the Board may rely Green's lack of complaint as substantive negative evidence. For these reasons, we *affirm* the Veterans Court's decision.

### AFFIRMED

### COSTS

No costs.