Citation Nr: 1730439 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 10-21 318 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Waco, Texas


THE ISSUES

1. Entitlement to service connection for hypertension, including as due to service-connected diabetes mellitus, type II and/or residuals of prostate cancer.

2. Entitlement to service connection for bilateral upper extremity peripheral neuropathy, including as due to service-connected diabetes mellitus, type II and/ or residuals of prostate cancer.

3. Entitlement to service connection for bilateral lower extremity peripheral neuropathy, including as due to service-connected diabetes mellitus, type II and/ or residuals of prostate cancer.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran (Appellant)


ATTORNEY FOR THE BOARD

J. Rohde, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant, had active service from March 1970 to October 1971.

This matter came before the Board of Veterans' Appeals (Board) on appeal from a February 2009 rating decision of the RO in Waco, Texas, which, in pertinent part, denied service connection for hypertension, bilateral upper extremity neuropathy, and bilateral lower extremity neuropathy. 

The case was previously before the Board in August 2016, where the Board remanded the issues of service connection for hypertension, bilateral upper extremity neuropathy, and bilateral lower extremity neuropathy for a clarification of a medical opinion in a May 2012 VA Form 21-4138 that was signed by the Veteran. The record reflects that the Veteran has received a request for clarification in October 2016, which satisfies the previous Board remand directives. As such, the Board finds the issues on appeal ripe for adjudication. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Veteran testified from Waco, Texas, at a December 2011 Travel Board hearing before a Veterans Law Judge (VLJ). The hearing transcript has been associated with the record. The undersigned VLJ is not the VLJ who presided over the December 2011 hearing. In a letter dated April 2016, the Veteran was advised of the right to have another hearing before a new VLJ, as the previous VLJ was no longer with the Board. The Veteran was informed that, if no request for a new hearing was received within 30 days from the date of the letter, the Board would assume that the Veteran did not want another hearing and proceed with the appeal. To date, the Veteran has not requested a new Board hearing. 

The instant matter is a Veterans Benefits Management System (VBMS) appeal. The Board has reviewed both the VBMS and the "Virtual VA" files so as to insure a total review of the evidence. Additional evidence has been received by the Board for which a waiver of initial RO consideration was provided. 38 C.F.R. § 20.1304 (2016).


FINDINGS OF FACT

1. The Veteran is currently diagnosed with hypertension.

2. There was no cardiovascular injury or disease during service, and symptoms or impairment of hypertension did not begin during active service and were not chronic in service.

3. Hypertension did not manifest to a compensable degree within one year of active service.

4. Symptoms or impairment of hypertension were not continuous since service.

5. The currently diagnosed hypertension was not caused or worsened in severity by the service-connected diabetes mellitus, type II, and/or service-connected prostate cancer.

6. The Veteran does not have, and has not had at any time proximate to or during the course of this appeal, diagnoses of bilateral upper or lower extremity peripheral neuropathy.


CONCLUSIONS OF LAW

1. Hypertension was not incurred in active service and may not be presumed to have been incurred in active service, including as secondary to service-connected diabetes mellitus, type II, and/or residuals of prostate cancer. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.310, 3.326(a) (2016).

2. The criteria for service connection for bilateral upper extremity peripheral neuropathy, including as secondary to the service-connected diabetes mellitus, type II, and/or residuals of prostate cancer, are not met. 38 U.S.C.A. §§ 1110, 1112, 1113, 5103(a), 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2016).

3. The criteria for service connection for bilateral lower extremity peripheral neuropathy, including as secondary to the service-connected diabetes mellitus, type II, and/or residuals of prostate cancer, are not met. 38 U.S.C.A. §§ 1110, 1112, 1113, 5103(a), 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a). The United States Court of Appeals for Veterans Claims' (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and 
(5) effective date of the disability. 

In December 2008, VA issued a VCAA notice letter that informed of the evidence generally needed to support a claim for service connection, what actions needed to be undertaken, and how VA would assist in developing the claim. The notice was issued to the Veteran prior to the February 2009 rating decision from which this appeal arises. Further, the issues were readjudicated in a April 2010 Statement of the Case (SOC), and in March 2013 and February 2017 Supplemental Statements of the Case (SSOC); therefore, there was no defect with respect to the timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Regarding the duty to assist in this case, the Veteran received VA examinations in December 2012. The examination reports are of record. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The examinations and opinion reports reflect that the VA examiners reviewed the record, conducted any necessary testing, and answered all relevant questions.

All relevant documentation has been secured or adequately attempted to be secured, including VA and private treatment (medical) records, and all relevant facts have been developed. There remains no question as to the substantial completeness of the issue of service connection for pulmonary hypertension. 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.159, 3.326(a). Any duties imposed on VA, including the duties to assist and to provide notification, have been met as set forth above.
Service Connection Law and Regulation

Service connection may be granted for disability arising from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

In this case, hypertension (cardiovascular disease) and peripheral neuropathy are "chronic diseases" under 38 C.F.R. § 3.309(a); therefore, the presumptive service connection provisions based on "chronic" in-service symptoms and "continuous" post-service symptoms under 38 C.F.R. § 3.303(b) apply. Walker v. Shinseki, 
708 F.3d 1331 (Fed. Cir. 2013). 

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. 38 C.F.R. 
§ 3.303(b).

In addition, the law provides that, where a veteran served ninety days or more of active service, and certain chronic diseases become manifest to a degree of 
10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time.

Service connection may be granted for disability that is proximately due to or the result of a service-connected disability. Service connection may also be granted for the degree of disability resulting from aggravation of a nonservice-connected disability by a service-connected disability. See 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439, 448 (1995).

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his or her behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence).

Service Connection for Hypertension

Throughout the course of this appeal, the Veteran has advanced that hypertension was caused or aggravated by the service-connected diabetes mellitus, type II, and/or residuals of prostate cancer. 

At the outset, the Board notes that the Veteran has a current diagnosis of hypertension. Private (medical) treatment records reflect that the Veteran has been treated for hypertension since September 1993. The element of a current disability has been established. 

Pursuant to Diagnostic Code 7101, Note 1, for VA rating purposes, the term hypertension means that the diastolic blood pressure is predominantly 
90 millimeters (mm.) or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160 mm. or greater with diastolic blood pressure of less than 90 mm. 38 C.F.R. § 4.104 (2016). The record reflects that the Veteran received a blood pressure reading at the entrance to service examination in August 1969 of systolic 130/diastolic 80. Additionally, the record reflects that the Veteran received a blood pressure reading at the separation from service examination in October 1971 of 122/84.

During active service, no diastolic blood pressure reading of 90 mm. or greater was recorded. For these reasons, the Board finds that the diastolic blood pressure readings were not "predominantly" 90 mm. or greater. Additionally, the Board notes that the highest systolic blood pressure reading recorded was 130 mm. As such, the Board finds that the Veteran's systolic blood pressure was not predominantly 160 mm. or greater during service. 

Considering entitlement to service connection on a presumptive basis, review of all the relevant evidence of record, lay and medical, reflects that symptoms and impairment of hypertension did not have onset during service or within one year of service, were not chronic in service, and have not been continuous since service separation in October 1971. 

Service treatment records are negative for any complaint, findings, diagnosis, or treatment of hypertension during service. As indicated, blood pressure readings (findings) throughout service do not suggest hypertension. The report from the October 1971 service separation examination reflects that the Veteran's lungs, chest, and heart were normal at service separation. The service treatment records appear to be complete, and complaints of cardiovascular problems would have been recorded had the Veteran sought treatment during service. While in service, the Veteran did seek treatment for tuberculosis. As the Veteran was willing to seek treatment for that problem, the Veteran would have also sought treatment for cardiovascular disability symptoms or impairment. As a result, the absence of any in-service complaint, finding, or reference to treatment for symptoms or impairment of hypertension is one factor, among others in this case, that weighs against a finding that the Veteran incurred hypertension in service or had chronic symptoms of such during service. Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011) (stating that VA may use silence in the service treatment records as evidence contradictory to a veteran's assertions if the service treatment records appear to be complete and the injury, disease, or symptoms involved would ordinarily have been recorded had they occurred) (Lance, J., concurring); Cf. AZ v. Shinseki, 731 F.3d 1303, 1315-18 (Fed. Cir. 2013) (recognizing and applying the rule that the absence of a notation in a record may be considered if it is first shown both that the record is complete and also that the fact would have been recorded had it occurred, although holding that a veteran's failure to report an in-service sexual assault to military authorities may not be considered as relevant evidence tending to prove that a sexual assault did not occur because military sexual trauma is not a fact that is normally reported); Buczynski v. Shinseki, 24 Vet. App. 221, 224 (2011) (the absence of a notation in a record may be considered if it is first shown both that the record is complete and also that the fact would have been recorded had it occurred); see also Fed. R. Evid. 803(7) (indicating that the absence of an entry in a record may be evidence against the existence of a fact if such a fact would ordinarily be recorded).

At the December 2011 Travel Board hearing, the Veteran did not testify to, and the evidence of record does not reflect, any cardiovascular injury or disease during service. The Veteran also testified being diagnosed with diabetes mellitus, type II, and hypertension after service on or about 1987.

The first diagnosis of hypertension appears in the report from a private medical doctor in September 1993. There is no further evidence regarding hypertension between its asserted onset in 1987 and service separation in 1971. Additionally, the first medical evidence of hypertension is the September 1993 private treatment records.
 
After a review of all the evidence, lay and medical, the Board finds that a preponderance of the evidence is against a finding that the Veteran's hypertension began in service, showed chronic symptoms or impairment in service, or manifested to a compensable degree within one year of service separation. Service treatment records reflect that the Veteran was not treated for hypertension in service, and private treatment records convey that the Veteran was not diagnosed with hypertension until 1993 (approximately 22 years after service separation). 

Considering the evidence of record, as the Veteran's period of honorable service ended in October 1971, the evidence does not show that the currently diagnosed hypertension had its onset during service, or chronic symptoms or impairment in service, or manifested to a compensable degree within one year of service. 

The Board next finds the weight of the evidence demonstrates that symptoms and impairment of hypertension have not been continuous since service separation in October 1971. As noted above, the Veteran was not treated for or diagnosed with hypertension in service, and was first diagnosed with hypertension 22 years after service separation in 1971. The approximately 22 year period between service and the onset of hypertension is one factor that weighs against a finding of service incurrence, including by continuous symptoms since service from which service incurrence would be presumed. See Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (the lack of contemporaneous medical records is one fact the Board can consider and weigh against the other evidence, although the lack of such medical records does not, in and of itself, render the lay evidence not credible); see also Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (the passage of many years between discharge from active service and the medical complaint of a claimed disability is one factor to consider as evidence against a claim of service connection). Additional factors weighing against continuous symptomatology since service include the lack of service treatment records showing any symptoms or impairment of hypertension, and the Veteran's assertion that symptoms began in 1987 (16 years after service separation).

As to direct service connection, the Board finds that the evidence of record conveys no cardiovascular injury or disease during service. Service treatment records note no such injury or disease. The Veteran has also not advanced having any such in-service injury or disease, and, in fact, has always attributed the cause of the currently diagnosed hypertension to a service-connected disability. Further, VA and private treatment records do not reflect that any VA or private physician has tied the currently diagnosed hypertension to an event, injury, or disease in service.

Finally, having reviewed all of the evidence of record, both lay and medical, the Board finds that the weight of the evidence is against a finding that hypertension was caused or aggravated by the service-connected diabetes mellitus, type II, and/or residuals from prostate cancer. At the December 2011 Travel Board hearing, the Veteran testified that a private doctor had opined that the hypertension could be related to the service-connected diabetes mellitus, type II; however, review of all medical evidence of record, both VA and private, reflects that no medical professional has opined that the currently diagnosed hypertension was caused or aggravated by either the service-connected diabetes mellitus, type II, and/or residual of prostate cancer.

In May 2012, the Veteran submitted a partial medical opinion that provided no rationale and was signed by the Veteran. The Veteran was contacted for clarification in an October 2016 letter, but did not provide an explanation or clarification of the May 2012 letter. Based on the lack of attribution to a medical professional, the Board finds that this statement was the Veteran's, and, as discussed below, under the facts of this case he is not competent to provide an opinion.

Although the Veteran has asserted that the hypertension is causally related to the service-connected diabetes mellitus, type II, and/or residuals of prostate cancer, he is a lay person and, under the facts of this particular case, does not have the requisite medical training or credentials to be able to render a competent medical opinion regarding the cause of the hypertension. The etiology of the Veteran's hypertension is a complex medical etiological question dealing with the origin and progression of the cardiovascular system, and such a disability is diagnosed primarily on clinical findings and physiological testing, such as blood pressure readings, and involves a knowledge of the complex interaction between hypertension (vascular system) and diabetes (endocrine system) and prostate cancer (genitourinary system) with knowledge of oncology. Thus, while the Veteran is competent to report some hypertension symptoms experienced at any time, under the facts of this case, the Veteran is not competent to opine on whether there is a link between the hypertension and the service-connected diabetes mellitus, type II, and/or the residuals of prostate cancer. See Kahana, 24 Vet. App. at 438 (recognizing that lay competency is determined on a case by case basis); Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons are not competent to diagnose cancer); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (holding that rheumatic fever is not a condition capable of lay diagnosis).

Evidence weighing against a finding that the service-connected diabetes mellitus, type II, and/or residuals of prostate cancer, caused or aggravated the currently diagnosed hypertension includes the December 2012 VA examination report. Per the report, the VA examiner opined that it was less likely than not that the currently diagnosed hypertension was either caused or aggravated by the service-connected diabetes mellitus, type II, and/or residuals of prostate cancer. Per the VA examiner's rationale, the Veteran was taking multiple medications to control hypertension before being diagnosed with diabetes mellitus, type II, and prostate cancer, and that there is no evidence that diabetes mellitus, type II, and prostate cancer symptoms or treatments adversely impacted the Veteran's blood pressure; therefore, there is no causation or aggravation beyond the natural progress of the disability. The VA examiner reviewed a full and accurate medical history, considered the Veteran's assertions, and answered all relevant questions; therefore, the Board finds this opinion to be highly probative.

Additionally, in April 2012 VA treatment records, a doctor advised the Veteran that hypertension is not usually caused by diabetes mellitus, type II.

As such, the weight of the lay and medical evidence reflects that the currently diagnosed hypertension was neither caused nor aggravated by the service-connected diabetes mellitus, type II, and/or residuals of prostate cancer. For these reasons, the Board finds that the weight of the evidence is against direct, presumptive, or secondary service connection for hypertension under the provisions of 38 C.F.R. 
§§ 3.303, 3.307, 3.309, and 3.310. As the preponderance of the evidence is against service connection, the benefit of the doubt doctrine does not apply, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Service Connection for Bilateral Upper and Lower Extremity Neuropathy

The Veteran has asserted service connection for a bilateral upper and lower extremity neuropathy, to include as secondary to service-connected diabetes mellitus, type II, and/or residuals of prostate cancer. Specifically, the Veteran stated that the tingling and numbness in the hands and feet are due to the symptoms and treatment for diabetes mellitus, type II, and/or residuals of prostate cancer.

The Veteran has complained of numbness and tingling of the hands and feet as evidenced by multiple VA and private (medical) treatment records. The numbness and tingling were attributed to poor circulation. In January 2013, VA treatment records reflect a working diagnosis of neuropathy, but it was never confirmed. As discussed below, the December 2012 VA examiner did not diagnose neuropathy of any kind.

After a review of all the evidence, lay and medical, the Board finds that the weight of the evidence is against a finding that the Veteran has a diagnosis of bilateral upper and lower extremity neuropathy. The December 2012 VA examiner, who reviewed the claims file, interviewed the Veteran, and conducted a physical examination, came to the conclusion that the Veteran does not have a diagnosis of neuropathy. The VA examiner reasoned that there was no evidence of neuropathy, as well as no evidence of any diabetic peripheral neuropathy or any effects of prostatic radiation or medication. The VA examiner did not specifically discuss lower extremity neuropathy; however, the testing, Veteran's assertions, and examination included the Veteran's lower extremities, which test negative for neuropathy of any kind. The Board finds that this medical opinion carries significant probative weight as the VA examiner based this opinion on the Veteran's medical history, lay statements advanced by the Veteran, and the current diagnostic evidence.

Service connection may only be granted for a current disability; when a claimed condition is not shown, there may be no grant of service connection. See 
38 U.S.C.A. § 1110; Rabideau v. Derwinski, 2 Vet. App. 141 (1992) (Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability). "In the absence of proof of a present disability there can be no valid claim." See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). See also McClain v. Nicholson, 21 Vet. App. 319 (2007) (holding that service connection can also be warranted if there was a disability present at any point during the claim period, even if it is not currently present); Romanowsky v. Shinseki, 26 Vet. App. 289 (2013) (holding that a current disability may include a diagnosis at the time the claim was filed or during its pendency).


The Board finds that the weight of the evidence in this case is against finding current disabilities of bilateral upper and lower extremity neuropathy at any point during the claim period or even recent diagnoses prior to the filing of the claim for service connection. See Waters v. Shinseki, 601 F.3d 1274, 1277 (Fed. Cir. 2010) (stating that there must be "medically competent" evidence of a current disability). The VA examiner's opinion provides clear rationale as to why the Veteran's reported symptoms do not warrant a diagnosis of bilateral upper and lower extremity neuropathy. As discussed above, the VA and private treatment records reflect numbness attributed to poor circulation, but no diagnosis of bilateral upper and lower extremity neuropathy.

The lay evidence supporting a finding of bilateral upper and lower extremity neuropathy consists of the Veteran's lay statements regarding numbness and tingling in the hands and feet after service. Although the Veteran is competent as a lay person to report numbness and tingling, the Veteran is a lay person and, under the facts of this particular case, does not have the requisite medical training or credentials to be able to be able to diagnose medically complex nervous system disorders. See Kahana, 24 Vet. App. at 438 (ACL injury is a medically complex disorder that required a medical opinion to diagnose and to relate to service), Woehlaert, 21 Vet. App. at 462 (concerning rheumatic fever); Jandreau, at 1377, n. 4 ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"); see 38 C.F.R. § 3.159(a)(2). Diagnosing bilateral upper and lower extremity neuropathy involves internal and unseen system processes unobservable by the Veteran, not simply observation of observable symptoms such as numbness or tingling. The Veteran has not been shown to have such knowledge, training, or experience.

For these reasons discussed above, the Board finds that the weight of the evidence demonstrates that the Veteran does not have current disabilities of bilateral upper and lower extremity neuropathy; therefore, as there is no current disability, service 

connection is not warranted on secondary basis. 38 C.F.R. § 3.310. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine does not apply, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. 
§ 3.102.


ORDER

Service connection for hypertension, including as due to service-connected diabetes mellitus, type II, and/or residuals of prostate cancer, is denied.

Service connection for bilateral upper extremity peripheral neuropathy, including as due to service-connected diabetes mellitus, type II, and/or residuals of prostate cancer, is denied.

Service connection for bilateral lower extremity peripheral neuropathy, including as due to service-connected diabetes mellitus, type II, and/or residuals of prostate cancer, is denied.





____________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs