﻿Citation Nr: AXXXXXXXX
Decision Date: 01/08/19 Archive Date: 01/08/19

DOCKET NO. 181107-832
DATE: January 8, 2019

ORDER

Entitlement to a compensable rating for bilateral hearing loss is denied. 

Entitlement to service connection for asthma is denied.

Entitlement to service connection for hemorrhoids is denied.

FINDINGS OF FACT

1. Throughout the appeal period, the Veteran’s hearing loss is manifested by no more than Level I hearing in the right ear and Level II hearing in the left ear.

2. The preponderance of the evidence is against finding that the Veteran has asthma due to service.

3. The preponderance of the evidence is against finding that the Veteran has hemorrhoids due to service. 

CONCLUSIONS OF LAW

1. The criteria for a compensable evaluation (in excess of 0 percent) for bilateral hearing loss are not met. 38 U.S.C. § 1155; 38 C.F.R. § 4.85, Part 4, Diagnostic Code 6100.

2. The criteria for service connection for asthma have not been met. 38 U.S.C. §§ 1101, 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).

3. The criteria for service connection for hemorrhoids have not been met. 38 U.S.C. §§ 1110, 1111, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with the Department of Veterans Affairs’ (VA’s) decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from June 1961 to June 1970. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the October 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form or May 10, 2018. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

1. Entitlement to a compensable disability rating for bilateral hearing loss from March 25, 2013, to May 10, 2018.

Disability evaluations are determined by comparing a Veteran’s present symptomatology with criteria set forth in the VA’s Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

The Veteran’s entire history is reviewed when making disability evaluations. See generally, 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). In general, the degree of impairment resulting from a disability is a factual determination and the Board’s primary focus in such cases is upon the current severity of the disability. Francisco v. Brown, 7 Vet. App. 55, 57-58 (1994); Solomon v. Brown, 6 Vet. App. 396, 402 (1994). However, staged ratings are appropriate in any initial rating/increased-rating claim in which distinct time periods with different ratable symptoms can be identified. Fenderson v. West, 12 Vet. App. 119, 126-127 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

In evaluating service-connected hearing impairment, disability ratings are derived by a mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are rendered. See Acevedo-Escobar v. West, 12 Vet. App. 9, 10 (1998); Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). The schedule provides a table (Table VI) to determine a Roman numeral designation (I through XI) for hearing impairment. Testing for hearing loss is conducted by a state-licensed audiologist, including a controlled speech discrimination test (Maryland CNC).

The evaluation is based upon a combination of the percent of speech discrimination and the puretone threshold average which is the sum of the puretone thresholds at 1000, 2000, 3000 and 4000 Hertz, divided by four. See 38 C.F.R. § 4.85. Table VII in the schedule is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment of each ear, the horizontal rows representing the ear having better hearing and the vertical columns the ear having the poorer hearing. The percentage evaluation is indicated where the row and column intersect. Table VIa is used when the examiner certifies that the use of speech discrimination test is not appropriate because of language difficulties, inconsistent speech discrimination scores, etc., or when indicated under the provisions of 38 C.F.R. § 4.86. See 38 C.F.R. § 4.85(c). 

When the puretone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. Each ear will be evaluated separately. See 38 C.F.R. § 4.86(a). When the puretone threshold is 30 decibels or less at 1000 Hertz, and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. That numeral will then be elevated to the next higher Roman numeral. See 38 C.F.R. § 4.86(b).

In his April 2017 substantive appeal, the Veteran contended that he met the criteria for a compensable rating for his service-connected bilateral hearing loss.

In August 2014, the Veteran was afforded a VA audiological examination. On the authorized audiological evaluation, puretone thresholds, in decibels, were as follows:

 HERTZ 

 1000 2000 3000 4000 average

RIGHT 35 40 50 70 49

LEFT 35 60 65 75 59

Speech audiometry tested speech recognition ability and revealed 100 in the right ear and 96 in the left ear. The examiner indicated that the Veteran had bilateral sensorineural hearing loss and it affected his daily life including difficulty hearing and understanding others. The examiner opined that the Veteran’s bilateral hearing loss was due to his military noise exposure based on his military occupational specialty of a combat airlift navigator. He was exposed to engine noise as well as mortar fire without the benefit of hearing protection. 

Under the rating criteria, the examination results constitute Level II hearing in the left ear and Level I hearing in the right ear. When considered together, the result is a noncompensable (0 percent) disability evaluation. Further, the Board finds that 38 C.F.R. § 4.86(a) is not applicable as the puretone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) are not 55 decibels or more. The Board further finds that 38 C.F.R. § 4.86(b) is not for application as the puretone threshold is not 30 decibels or less at 1000 Hertz, and 70 decibels or more at 2000 Hertz.

The Veteran asserts that he is entitled to a higher rating for his hearing loss disability. As evidenced above, however, notwithstanding the Veteran’s complaints, the audiology examination yielded results that warranted a noncompensable (0 percent) disability evaluation. To the extent that his hearing is impaired, the fact that the Veteran’s hearing acuity is less than optimal does not by itself establish entitlement to a higher disability rating. To the contrary, it is clear from the Rating Schedule that a higher rating can be awarded only when loss of hearing has reached a specified measurable level. The medical evidence does not support the assignment of ratings higher than those assigned during the entire appeal period, nor has the Veteran asserted that his hearing worsened during the appeal period.

The Board in no way discounts the difficulties that the Veteran experiences as a result of his hearing loss. However, as was explained above, the assignment of disability ratings for hearing impairment is derived by a mechanical application of the rating schedule to the numeric designation assigned after audiometry results are obtained. Hence, the Board has no discretion in this matter and must predicate its determination on the basis of the results of the audiology results of record. See Lendenmann v. Principi, 3 Vet. App. 345 (1992). In other words, the Board is bound by law to apply VA’s rating schedule based on the Veteran’s audiometry results. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

For all the foregoing reasons, the Board finds that the evidence does not support the assignment of a compensable rating. Therefore, entitlement to an increased rating for the impairment associated with bilateral hearing loss is not warranted. 

In determining whether a higher rating is warranted for service-connected disability, VA must determine whether the evidence supports the Veteran’s claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107(a); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). In this case, the preponderance of the evidence is against a compensable rating.

Lastly, consideration of a compensable rating on an extraschedular basis pursuant to 38 C.F.R. 3.321 (b)(1) is not warranted because (1) the schedular criteria for hearing loss contemplate the functional effects of difficulty hearing and understanding speech, which are the type/nature of complaints reported by the Veteran in this case; and (2) there is no general requirement on the Board to engage in extraschedular analysis in all hearing loss rating cases. See Doucette v. Shulkin, 28 Vet. App. 366 (2017); and Martinak v. Nicholson, 21 Vet. App. 447 (2007). See also, Yancy v. McDonald, 27 Vet. App. 484 (2016).

Service Connection

Entitlement to service connection requires evidence of three elements: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or nexus between the current disability and the disease or injury incurred or aggravated during active service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

2. Service connection for asthma.

The Veteran contends that his asthma is related to his active duty service.

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has current diagnoses of asthma, the preponderance of the evidence weighs against finding that the Veteran’s asthma began during service or is otherwise related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303 (a), (d).

The service treatment records (STRs) do not reflect any complaints, findings, treatment, or diagnosis of the lungs or chest. The Veteran was found to have normal lungs and chest during the following examinations: February 1961, October 1964, August 1965, December 1966, November 1967, November 1968, November 1969, May 1970, and September 1972. Also, the Veteran denied having asthma, shortness of breath, pain or pressure in his chest, or chronic cough during his December 1966 and November 1967 Reports of Medical History.

The available medical records show that he was diagnosed with asthma in February 2008, decades after his separation from service. While the Veteran is competent to report having experienced respiratory difficulty, he is not competent to provide a diagnosis in this case or determine that these symptoms were manifestations of asthma. The issue is medically complex, as it requires knowledge of the interaction between multiple organ systems in the body and interpretation of complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

Further, the Veteran’s complete service treatment records in this case, which were generated contemporaneous to service, are likely to accurately reflect the Veteran’s physical condition, so are of significant probative value, especially because the Veteran was treated on other occasions for other disorders such as a knee surgery, dislocated shoulder, flu symptoms, skin rash, pharyngitis, nasal congestion, muscle soreness, lacerations, and stomach cramps, though he did not report any such problems or symptoms regarding asthma. See Kahana v. Shinseki, 24 Vet. App. 428, 437 (2011); Buczynski v. Shinseki, 24 Vet. App. 221, 224 (2011). While the Veteran has recently, as part of the current claim for compensation, advanced having asthma since service in consideration of other evidence included in the service treatment records, it is likely that any respiratory difficulty or disorder or symptoms would have been mentioned and/or detected during service. In April 2017, the Veteran noted that records from 1968 and 1969 noted breathing difficulty; however, these records noted tonsillitis, gastroenteritis, and pain in his right arm from trauma. The Veteran specifically denied current problems or any history of asthma, shortness of breath, pain or pressure in his chest, or chronic cough at the time of the December 1966 and November 1967 Reports of Medical History. Also, he denied breathing problems during all active duty examinations. As such, the complete service treatment records in this case, which were generated contemporaneous to service, are likely to accurately reflect the Veteran’s physical condition, so are of significant probative value, especially because the Veteran was treated for other disorders and likely would have reflected any complaints or treatment for asthma had such occurred during service. Id. 

While the Veteran believes his asthma occurred during active service, and he is competent to report experiencing symptoms of asthma during and since service, the Board finds that the Veteran’s recent statements made in connection with his current claim years later asserting symptoms of asthma during service are inconsistent with, and outweighed by, other more contemporaneous lay and medical evidence of record, so are not credible. See Curry v. Brown, 7 Vet. App. 59 (1994). Thus, on review of all the evidence, lay and medical, the Board finds the weight of the evidence demonstrates there was no in-service respiratory injury or disease, and service connection is not established for asthma. As the preponderance of the evidence is against the claim of entitlement to service connection for asthma, the benefit-of-the-doubt doctrine does not apply, and the claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

3. Service connection for hemorrhoids is denied.

The Veteran contends that he had hemorrhoids since his active duty service.

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has a diagnosis of hemorrhoids, the preponderance of the evidence is against finding that it began during active service, or is otherwise related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303 (a), (d).

The service treatment records (STRs) do not reflect any complaints, findings, treatment, or diagnosis of a rectal disease or injury. The Veteran was found to have a normal anus and rectum during the following examinations: February 1961, October 1964, August 1965, December 1966, November 1967, November 1968, November 1969, May 1970, and September 1972. Also, the Veteran denied having piles or a rectal disease during his December 1966 and November 1967 Reports of Medical History.

The available medical records show that he was diagnosed with external hemorrhoids in August 2006, over three decades after the Veteran’s separation from active service. 

Further, the Veteran’s complete service treatment records in this case, which were generated contemporaneous to service, are likely to accurately reflect the Veteran’s physical condition, so are of significant probative value, especially because the Veteran was treated on other occasions for other disorders such as a knee surgery, dislocated shoulder, flu symptoms, skin rash, pharyngitis, nasal congestion, muscle soreness, lacerations, and stomach cramps, though he did not report any such problems or symptoms regarding the rectum. See Kahana v. Shinseki, 24 Vet. App. 428, 437 (2011); Buczynski v. Shinseki, 24 Vet. App. 221, 224 (2011). While the Veteran has recently, as part of the current claim for compensation, advanced having hemorrhoids since service in consideration of other evidence included in the service treatment records, it is likely that any rectal injury or disorder or symptoms would have been mentioned and/or detected during service. The Veteran specifically denied current problems or any history of piles or rectal disease at the time of the December 1966 and November 1967 Reports of Medical History. As such, the complete service treatment records in this case, which were generated contemporaneous to service, are likely to accurately reflect the Veteran’s physical condition, so are of significant probative value, especially because the Veteran was treated for other disorders and likely would have reflected any complaints or treatment for hemorrhoids had such occurred during service. Id. 

While the Veteran believes his hemorrhoids occurred during active service, and he is competent to report experiencing symptoms of hemorrhoids during and since service, the Board finds that the Veteran’s recent statements made in connection with his current claim years later asserting symptoms of hemorrhoids during service are inconsistent with, and outweighed by, other more contemporaneous lay and medical evidence of record, so are not credible. See Curry v. Brown, 7 Vet. App. 59 (1994). Thus, on review of all the evidence, lay and medical, the Board finds the weight of the evidence demonstrates there was no in-service rectal injury or disease, and service connection is not established for hemorrhoids. The appeal therefore, must be denied.

 

S. L. Kennedy

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD J. Costello, Associate Counsel